[Civ. No. 6706. First Appellate District, Division One.—April 19, 1929.]

FREDERICK PETERS, Respondent, v. UNITED STUDIOS, INC., et al., Appellants.

Loeb, Walker & Loeb and Milton H. Schwartz for Appellants.

E. B. Drake for Respondent.

DOOLING, J., *pro tem.*—This is an appeal by defendants United Studios, Inc., and Kenneth Daum .from a judgment following a verdict against appellants for personal injuries suffered by plaintiff and respondent Peters.

Peters, who is a moving picture actor, was struck and injured by a tractor belonging to appellant United Studios, Inc., and driven by appellant Daum. At the time of the injury Daum was in the general employ of United Studios, Inc., and had been driving the tractor for such employer for more than a year. A few days before the injury to Peters, Daum had been sent with the tractor to the Christie Film Company and while Daum was driving the tractor in the filming of a scene for a moving picture comedy being made by the Christie Company the tractor struck and injured Peters, who was one of the characters in the scene.

The court gave the jury the following instruction: "You are instructed that, as a matter of law and as a matter of fact, the defendant Kenneth Daum, in the driving, management and operation of the tractor that struck the plaintiff on the occasion involved here, was the agent and servant of the defendant, United Studios, Incorporated, and any act of negligence, if any, on his part, was the act of negligence of said defendant corporation as well as his own."

Appellant United Studios, Inc., asserts (1) that under the evidence Daum at the time of the injury was in the special employ of Christie Film Company so as to relieve United Studios, Inc., of liability for his negligence as a matter of law, or (2) that at least under the evidence the question should have been left to the jury to determine under appropriate instructions whether the Christie Company had not for the time become Daum's special employer so as to relieve the United Studios, Inc., of such liability. This raises the nice question of general and special employer in its application to the doctrine of *respondeat superior* which has so often troubled trial and appellate courts.

The evidence, which is substantially without conflict, shows that Daum had been and was in the general employ of United Studios, Inc., as a tractor driver; that, from five to seven days before the occurrence of the injury to Peters, Daum was sent with the tractor by his foreman to the Christie studios. Daum's testimony, as to what his foreman said at that time, which is the only testimony on the subject, was as follows:

"He told me that I was supposed to go over to the Christie Studios and do whatever they wanted done over there; that I was supposed to go along with the tractor, that they wanted a tractor over there and for me to go along and stay with them until they finished what they wanted."

"Well, he says, 'I have got a trip for you over to Christie Studios.' He said, 'You are supposed to go over there and stay with Christie Studios until they get through,' and do whatever they wanted done over there, using me until they didn't need me any more, and bring it back and report the time after I got through with Christie Studios."

Daum was also told to report to George Brierly, Christie's foreman, and did so. The first day that he arrived at Christie's the Christie people attached two angle-irons to the front of the tractor. Then it was put on a truck and taken to Wilmington. At Wilmington it was used in filming certain scenes of a motion picture, on one occasion being driven by Jimmie Adams, a Christie comedian; and on the other occasions by appellant Daum. In one scene Daum was dressed in Adams' clothes and made up to look like Adams, "doubling for" Jimmie Adams. In the other scenes Daum wore his own clothes and was not made up. In one scene Daum pushed a series of boxes or crates along the pier and in another successively shoved seven crates off the pier into the water with a moving picture actor on top of each crate. At one time at Wilmington the tractor was left running around in circles with no driver and without anybody within forty feet of it. Daum remained at Wilmington with the tractor about four or five days. During that time the tractor was kept each night in a warehouse furnished by the Christie Company. The scenes in which the tractor was used were directed by one Watson, a Christie director. Watson told Daum what to do, but did not undertake to interfere with the mechanical operation of the trac-

tor. Watson testified that he did not arrange with the United Studios, Inc., for the tractor and driver and knew nothing about the contract between Christie's and the United Studios, Inc. He did not talk with anybody about the control which he was to exercise over Daum, but assumed to make what use he saw fit of the tractor and driver.

On the day of the injury to Peters the tractor was brought from Wilmington to the Christie studio to be used in a scene made to represent a portion of the pier at Wilmington. Daum was to drive the tractor through a doorway and across the stage at a time when Jimmie Adams had fallen down and Adams was to get up and run out of its way. Daum drove the tractor in this manner four or five times and on the last time it struck an obstruction and veered into Peters. In this scene Daum wore no make-up.

Oil and gas were furnished by Christie and Daum kept track of his time and turned it in to the United Studios, Inc., after he took the truck back to them and was paid his regular wages by United Studios, Inc. After the injury to Peters the Christie Company had no further use for the tractor and after the angle-irons had been removed, Daum returned with the tractor to the United Studios, Inc.

Other than Daum's testimony as to what he was told to do by his foreman before taking the tractor to Christie's the record is silent as to the contract or arrangement between the United Studios, Inc., and the Christie Company.

There are certain well-settled rules of law applicable to this class of cases.

1. "When a master hires out, under a rental agreement, the services of an employee for the operation of an instrumentality owned by the master, together with the use of the instrumentality, without relinquishing to the hirer the power to discharge such servant, to go where and perform such work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to do in the performance of the work, the servant as the operator of the instrumentality employed in the doing of the work, remains, in the absence of an agreement to the contrary, the servant of the general employer in so far as concerns the manner and method of operating the instrumentality, and the negligence of the servant must be held to be that of the owner of the instrumentality." (*Billig*

v. *Southern Pacific Co.*, 189 Cal. 477, 485 [209 Pac. 241, 244]; 1 Labatt on Master and Servant, 2d ed., p. 176.)

2. However the general employer may lend his servant together with an instrumentality in such a manner as to render the person to whom the servant is loaned the special master *pro hac vice* and hence relieve the general employer from liability for the servant's negligence in the operation of the instrumentality. (*Burns* v. *Jackson*, 59 Cal. App. 662 [211 Pac. 821]; *Linstead* v. *Chesapeake & O. Ry. Co.*, 276 U. S. 28 [72 L. Ed. 319, 48 Sup. Ct. Rep. 241].)

3. But "to escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary co-operation where the work furnished is part of a larger operation." (*Moss* v. *Chronicle Pub. Co.*, 201 Cal. 610, 616 [55 A. L. R. 1258, 258 Pac. 88, 91]; *Standard Oil Co.* v. *Anderson*, 212 U. S. 215 [53 L. Ed. 480, 29 Sup. Ct. Rep. 252].)

4. "It is the right to exercise control rather than the mere fact of its exercise which is decisive." (*Umsted* v. *Scofield Eng. Const. Co.*, 203 Cal. 224 [263 Pac. 799, 801]; *Bartolomeo* v. *Charles Bennett Cont. Co.*, 245 N. Y. 66 [156 N. E. 98]; 39 C. J., pp. 1274, 1275.)

Applying these rules to the evidence above summarized, our problem is this: Under that evidence was the trial court correct in holding that there was no evidence sufficient to overcome the presumption that Daum remained the employee of his general employer, United Studios, Inc., at all times while operating the tractor? And the correct solution of this question depends in turn upon the answer to the further question: Did the United Studios, Inc., surrender wholly and entirely to the Christie Company the right to exercise control over Daum in the operation of the tractor? Because if the United Studios, Inc., retained any right of control over Daum, whether they actually exercised any control at the time of the injury or not becomes immaterial. The question is not: "Who was Daum obeying?" but "Who was Daum bound to obey?" (*Billig* v. *Southern Pacific Co.*, *supra*, p. 484.)

Before attempting an answer to these questions it may be well to examine briefly the fundamental basis of the legal presumption that a servant lent or hired with an instrumentality remains the servant of the owner of the instrumentality. The prototype of this class of cases is the case of a driver lent or hired with a horse and carriage. The courts early came to see that the driver even though borrowed or hired by another was still performing the services for which he was hired by the owner of the horse and carriage, i. e., driving them. Even though transporting another in the carriage, still in the operation of driving his master's horse and managing his master's carriage he was still doing just what his master had hired him to do. His business for his master was to drive that horse and carriage. The change from a horse-drawn to a self-propelled vehicle creates no change in the basic relation. Daum in driving the tractor, i. e., in its mechanical operation, was doing just what he was employed by the United Studios, Inc., to do. (*Stewart* v. *California Imp. Co.*, 131 Cal. 125, 131 [52 L. R. A. 205, 63 Pac. 177, 724].) ■ It follows that in order to relieve itself from liability under the doctrine of *respondeat superior* the United Studios, Inc., must affirmatively show that by its agreement with the Christie Company it had for the time surrendered to the latter company all right to control Daum in the operation of its tractor. As the New York court of appeals said in a recent case where a steam shovel with its operators had been hired by another:

"The Powers-Kennedy Company, after the shovel had been placed upon the work, directed the engineer of the shovel where to make excavations. It gave no directions as to the details of the work, such as firing the boiler, regulating the steam pressure, applying the levers to start the machinery, maneuvering the boom and bucket, oiling the machinery, or giving care to the steam shovel to keep it in working order. It was important to the defendant, as the owner of the machine, in order that the life of the machine might be preserved, that the engineer and fireman, in respect to these and other details, perform their work with care, skill and judgment.

"When originally employed, the engineer and fireman subjected themselves to the orders of the defendant in re-

spect to all such matters, and became liable to discharge at the defendant's hands, if its orders were disobeyed. In the absence of proof that the defendant, the general employer, surrendered control, in these respects, to the Powers-Kennedy Company as special employer, it must be presumed that the defendant's 'power of control continued.'' (*Bartolomeo* v. *Charles Bennett Cont. Co., supra,* p. 69.)

■ In order to determine the effect of the evidence relied upon we may sum it up as follows:

As supporting the claim that appellant United Studios, Inc., surrendered full control of Daum to the Christie Company, that appellant cites:

1. Daum's foreman told him to take the tractor to the Christie studios and ''do whatever they want done'';

2. The Christie Company put angle-irons on the front of the tractor so that it could shove the crates around the wharf;

3. The Christie Company furnished the oil and gas;

4. Daum drove the tractor in the filming of certain scenes under the direction of Christie's director;

5. At one time Daum was ''made up'' to look like Jimmie Adams and ''doubled'' for Adams in driving the tractor;

6. The director had Adams drive the tractor in one scene;

7. In another scene the tractor was permitted to run in circles without any driver;

8. Daum 'did not report to the United Studios, Inc., at any time while driving the tractor for the Christie Company.

As supporting the position that United Studios, Inc., did not surrender full control of Daum respondent cites:

1. No one testified as to the exact terms of the contract or arrangement between United Studios, Inc., and the Christie Company, and Watson testified that he had no express authority or direction from anyone to assume full control of Daum and the tractor;

2. The United Studios, Inc., hired Daum and retained the right to discharge him;

3. The United Studios, Inc., continued to pay Daum's wages and he reported his time to them at the conclusion of his work with the Christie Company;

4. Watson, Christie's director, did not interfere with the mechanical operation of the tractor by Daum while Daum was driving it.

None of these facts are, in our judgment, conclusive either way.

The direction to Daum to do whatever the Christie Company wanted done is equivocal. It might indicate an intention to surrender complete control over Daum and the tractor to the Christie Company, or it might amount merely to a direction to Daum to co-operate with the Christie Company while retaining the general power of control over him in the United Studios, Inc. A direction to "do anything they wanted to take care of" in *Umsted* v. *Scofield Eng. Const. Co., supra*, was held not necessarily to indicate an intention by the general employer to surrender complete control of the employee, the court saying that "the jury may well have inferred that the absence of more specific and detailed instructions from Sayre was to be accounted for by the fact that Sims was a skilled electrician, who did not require supervision or control as to the details of accomplishing the task to which he was assigned." The jury might equally infer here that Daum being an experienced operator of the tractor did not require supervision or control in driving it.

The putting of angle-irons on the tractor and the furnishing of gas and oil may or may not have been with the consent of United Studios, Inc., and are in any event perfectly consistent with the retention of the general power of control over Daum by the United Studios, Inc.

The fact that Daum and the tractor were used in filming scenes of a moving picture and that Daum in one of these scenes was "made up" are persuasive but not conclusive of the exercise of full control by the Christie Company through their director. The fact that Daum was "made up" is no more important than the fact that a driver or chauffeur might wear a uniform furnished by the person to whom the owner had rented a carriage or automobile. Such fact is obviously not conclusive on the question of control (39 C. J. 1277). Neither in our opinion is the fact that Daum drove the tractor in the filming of scenes under the direction of Watson. It is true that in so doing Daum at Watson's direction must co-ordinate the movements of the tractor with the movements of the actors so as to get the desired effect in the finished film. But basically the situation was no different in this respect than in the case of *Standard Oil Co.* v. *Anderson, supra*. In that case the

general employer had let a steam winch and drum with a winchman to a master stevedore to assist in loading a ship. In hoisting and lowering the cargo the winchman acted on a signal from the stevedore's foreman. The supreme court of the United States in sustaining a verdict against the general employer based on the negligence of the winchman said:

"Much stress is laid upon the fact that the winchman obeyed the signals of the gangman, who represented the master stevedore, in timing the raising and lowering of the cases of oil. But when one large general work is undertaken by different persons, doing distinct parts of the same undertaking, there must be cooperation or there will be chaos. The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the obedience to those signals showed co-operation rather than subordination, and is not enough to show that there has been a change of masters."

The fact that the director had Adams drive the tractor in one scene and had it running in circles without a driver in another is not determinative of the question of who had the right of control over Daum when he was driving the tractor. Watson himself testified that he had no express authority or directions from anyone as to the extent of the control to be exercised over Daum and the tractor by himself. He may have gone beyond his rights in taking the control of the tractor from Daum, and while the United Studios, Inc., would have been relieved of liability for any mishap that might have occurred while Daum was not operating the tractor, that does not necessarily determine the question of their liability when Daum was operating it. The question is "who, at the time and place of the collision, had authoritative control"? (*Billig* v. *Southern Pacific Co., supra,* p. 483.)

The fact that Daum did not report to the United Studios, Inc., while driving the tractor for the Christie Company is not entitled to great weight. The right to control may exist without its exercise.

We conclude that it cannot be said from these facts that the court should have held as a matter of law that Daum at the time of the injury to Peters was the special employee

of the Christie Company so as to necessarily relieve appellant, United Studios, Inc., of liability for his negligence.

An examination of the facts relied upon by respondent to sustain the instruction of the trial court that United Studios, Inc., was the employer of Daum at the time of the injury and responsible for his negligence as a matter of law satisfies us that they are likewise not conclusive on that question.

The right to hire and discharge and the payment of wages by the general employer are evidentially important, but not conclusive of the fact that the general employer has retained control. (*Linstead* v. *Chesapeake & O. Ry. Co.,* *supra.*)

While the failure to control the mechanical · operation of the tractor is likewise evidentially important (*Bartolomeo* v. *Charles Bennett Cont. Co., supra*), yet it was said in *Burns* v. *Jackson,* 59 Cal. App. 662, at 668 [211·Pac. 821, 824], that "such matters would naturally be left to the judgment of the driver, who was better qualified and in a better position than the employer to exercise such judgment." The question is, again, not what control was actually exercised, but who had the authoritative right to control.

■ The fact that the terms of the contract of hiring were not conclusively proved left it, in our judgment, to the jury to determine from all the evidence who at the time and place of the injury had the right to exercise exclusive direction and control of the conduct of Daum.

In the last analysis the question really depends on the construction to be given to the direction of Daum to "do whatever they want done" in the light of all the proved circumstances in the case. That was peculiarly a fact to be determined by the jury and should not have been taken from them.

We conclude, therefore, that the court erred in instructing the jury as a matter of law that appellant, United Studios, Inc., was liable for the negligence of Daum.

We likewise conclude that under the evidence in this case the question of whether or not Daum remained subject to the control of United Studios, Inc., so as to render them liable for his negligence should have been left to the jury to decide under appropriate instructions by the court. This conclusion, we believe, is in harmony with all the decisions.

In considering the decisions it must be kept in mind that they fall into three classes: 1. Those in which the court held as a matter of law that the general employer was liable; 2. Those in which the court held as a matter of law that the special employer was liable; 3. Those in which the court held that the question was, or should properly have been, one for the jury to determine.

In the first class falls the Billig case, relied on by respondent. In that case the owner of a truck let truck and driver to another. The hirer superintended the loading and unloading, but exercised no control over truck or driver while on the road. For the negligence of the driver while on the road with a load the court held the owner of the truck liable as a matter of law, saying (pp. 485, 486): "While the evidence in the instant case shows that Geiger, under the implied terms of the claimed contract of hiring, possessed and exercised authority to control the conduct of Pratt in the work of loading and unloading, nevertheless, so the evidence shows, Geiger never assumed the right to direct and control Pratt in his operation of the truck while in transit, and there is no evidence showing, or tending to show, with respect to the operation of the truck, while in transit, that the defendant relinquished unto Geiger the right to control Pratt."

The difference on their facts between the Billig case and the instant case is obvious.

Typical of the second class of cases is *Linstead* v. *Chesapeake & O. Ry. Co., supra.* There two railroad companies had a reciprocal agreement by which each lent the other an engine and crew for certain hauling over the other's tracks. While the lent engine and crew were operating over the borrowing company's tracks they were subject exclusively to the borrowing company's control, a fact that was proved unequivocally and without conflict. There the United States supreme court held the special employer liable as a matter of law. There was no such unequivocal proof in the instant case.

In the third class fall most of the cases cited on this appeal. Of this class of cases Labatt says that "it is scarcely permissible to lay it down as a doctrine universally accepted, that a jury is never warranted in inferring a suspension of the general employer's control, unless there is some direct and

specific evidence which goes to show that it was intended by the parties to the contract that the driver should be entirely subject to the control of the hirer with respect to the management of the team. But the continuance of the general employer's control has been affirmed in cases of this class so frequently, and with relation to such a large variety of circumstances, that there would seem to be good grounds for saying that this doctrine really sums up the effect of the authorities as a whole. Whether this view be well founded or not, it will, at all events, be apparent from a perusal of the decisions collected in the subjoined note that it is extremely difficult to make good a claim or a defense based upon the theory that a person sent to take charge of a vehicle hired from his general employer was under the hirer's control in such a sense as to have become his servant for the time being." (1 Labatt on Master and Servant, 2d ed., pp. 176, 177.) In a recent case in our supreme court, *Umsted* v. *Scofield Eng. Const. Co., supra,* it was held that the question whether the general employer was liable should have been submitted to the jury and that the trial court erred in charging, as a matter of law, that the special employer had become *pro hac vice* the responsible employer. There the decedent, who was employed by his general employer as an electrician, was hired by a construction company from the general employer on a cost-plus basis for employee and material. His wages were paid by the general employer and he was told to do "anything they wanted to take care of." On the job the construction superintendent of the construction company had directed him as to what was to be done, but not as to how to do anything. The supreme court said: "The jury might have inferred that the instructions given by La Barr (of the construction company) were merely directions as to the result to be accomplished, such as are required in the nature of things to be given to independent contractors in any case. By reason of the character of the work, it would have been impossible for the duly authorized agents of the construction company and the electric company to have agreed beforehand as to the precise work to be done."

This language fits our case like a glove. To this class of cases likewise belongs *Burns* v. *Jackson, supra.* In that case the court affirmed a judgment where the question of the

liability of the special employer had been left to the jury as a matter of fact. While it is true that on the first appeal in that case the court affirmed a nonsuit as to the general employer the evidence was not set out, the court contenting itself with the statement that ''the testimony shows without contradiction that at the time of the collision referred to both truck and chauffeur were under the control and management of the defendant Jackson (the special employer)'' (*Burns* v. *Southern Pacific Co.*, 43 Cal. App. 667, 669 [185 Pac. 875]). If the testimony so showed without contradiction, of course the general employer was properly dismissed. (*Linstead* v. *Chesapeake & O. Ry. Co., supra.*)

Lastly, appellant relies much upon *Famous Players Lasky Corp.* v. *Industrial Acc. Com.*, 194 Cal. 134 [34 A. L. R. 765, 228 Pac. 5]. There the general employer furnished two airplanes with fliers for use in a moving picture. The fliers were accompanied by two representatives of the general employer who told them to ''put themselves under the direction of the representatives of the petitioner herein (the special employer) as to the details of the flight''; the representatives of the general employer then tacitly consented, by their silence, while the special employer directed the pilots to fly lower than they thought safe and in making such a flight one of the fliers was killed. The Industrial Accident Commission made an award against the special employer which was affirmed. This case is very similar to ours upon its facts, and undoubtedly justifies our conclusion that the trial court erred in instructing the jury, as a matter of law, that the United Studios, Inc., remained liable for Daum's negligence. But it does not require us to hold, as appellant contends, that under the evidence the Christie Company must be held, as a matter of law, to have acquired the entire right of control over Daum so as to relieve United Studios, Inc., from liability. It is to be observed in that connection, first, that the supreme court in that case was affirming a decision of the Industrial Accident Commission on the facts, and, second, that that case differed from ours in the important particular that the representatives of the general employer were present on the ground, expressly told the pilots to put themselves under the direction of the special employer and then by their silence tacitly acquiesced

in a direction by the special employer to fly lower, even when the pilots in their hearing objected that they feared it would be dangerous to do so. These facts might have justified the supreme court in holding that the general employer had surrendered the entire right of control, as a matter of law, had it been necessary to do so. They are essentially different from the facts here under consideration.

Respondent argues that cases under the Workmen's Compensation Act are, in any event, based upon a different principle of law and, therefore, are not controlling in a case involving the question of *respondeat superior*. Under the New York statute the New York court of appeals has held that the principle applicable to the two classes of cases is identical, i. e., that the special employer can be held liable for compensation under the Workmen's Compensation Act only when he would be liable to a third person for the injured employee's negligence. (*Schweitzer* v. *Thompson & Norris Co.*, 229 N. Y. 97 [127 N. E. 904].) This would seem to be the logical rule, and in the first California case holding both a general and special employer liable for workmen's compensation our supreme court said: "The definitions of 'employer' and 'employee' in our workmen's compensation law (sections 13, 14) are broad enough to include both the general and the special employer, and as such contracts of employment, express and implied, were recognized before the constitutional amendment, we do not see why either or both might not give jurisdiction to the Industrial Accident Commission." (*Employers' L. A. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432, 439 [177 Pac. 273, 275].)

We may, therefore, assume that the principles involved in the two classes of cases are identical. So assuming, we are satisfied that there is nothing inconsistent with our conclusion in any of the cases.

■ Appellants complain of the following instruction given by the court: "You are instructed that it was the duty of the United Studios, Inc., through its agent and servant in charge of the tractor that struck the plaintiff, to have used ordinary care and prudence in the management and operation thereof, and if you find under the evidence that the said driver of said tractor did not use the care of an ordinarily prudent person, but, on the contrary, negli-

gently operated the said tractor, and that said negligence, if any, was the sole proximate cause of any injuries to plaintiff, then you will find damages in favor of plaintiff and against defendants, and each of them, as defined in other instructions herein.''

As to appellant United Studios, Inc., this instruction is subject to the same vice as the instruction hereinabove discussed and assumes the liability of that appellant for the negligence of Daum.

As to appellant Daum, it contains a correct statement of the basis upon which he could be held liable. Counsel complains that it does not expressly refer to the absence of contributory negligence. But it does negative its existence by positing defendant's negligence as the *sole* proximate cause. Elsewhere the jury were fully instructed upon the subject of contributory negligence and they could not have misunderstood the meaning of the word ''sole'' in this instruction.

''Jurors are presumed to be persons of common intelligence and capable of comprehending the ordinary use of language as applied to the particular proposition under consideration and in reference to which it is employed. We will not assume that they may not have understood the charge as we understand it.'' (*Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237].) This is certainly true when the instruction states the law with entire correctness.

Appellants likewise complain, without any citation of authority, that conflicting instructions were given on the subject of contributory negligence. One instruction used the words ''contributed directly and proximately,'' another ''proximately cause'' and a third ''contributed in any manner proximately.'' It would seem better to omit the word ''directly'' in charging on proximate cause, although it was not disapproved in *Olsen* v. *Standard Oil Co.*, 188 Cal. 20, 25, 26 [204 Pac. 393], and the verb ''contribute'' seems preferable to ''cause'' in charging on contributory negligence. But the jury cannot have been misled by, or have misunderstood, the instructions as a whole.

It is also doubtful if appellants are in a position to complain in view of the fact that the transcript does not show that these instructions were not given at appellants' request. (*Sutter Butte Canal Co.* v. *American R. & A. Co.*, 182 Cal.

549, 553, 554 [189 Pac. 277]; *Bognuda* v. *Pearson,* 71 Cal. App. 105, 110, 111 [234 Pac. 857].)

Appellants finally assert that there is no evidence to support the finding of negligence. With this we cannot agree. Daum had driven the tractor through the same opening three or four times. There is evidence that he had a clearance on each side of from eighteen inches to two feet. On the last time through this opening the wheel of his tractor struck a projection and the tractor veered around and struck the plaintiff. The plaintiff testified that after striking the projection the truck came faster. From this evidence the jury was clearly warranted in finding either that Daum negligently drove too near the projection or after striking it negligently accelerated his motor or both.

In accordance with the views herein expressed the judgment is affirmed as to appellant Daum and reversed as to appellant United Studios, Inc.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 18, 1929.