**Charles M. READER, Appellant,**

v.

**GHEMM CO., Inc., Appellee.**

**No. 1232.**

Supreme Court of Alaska.

Nov. 30, 1971.

C. R. Kennelly, Nome, for appellant.

Hugh G. Wade, Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

BONEY, Chief Justice.

Charles Reader, the plaintiff below, appeals from a judgment for the defendant, Ghemm Company, Inc. (hereinafter referred to as Ghemm).

Ghemm was the general contractor on a garage construction site near Nome, Alaska. Reader and his partner, Axel Edman, had subcontracted to haul gravel to the site. On July 7, 1967, Reader was present at the site to supervise the dumping of gravel by two of his trucks, one of which was driven by Vernon Carlson. The gravel was being dumped into the excavation where an employee of Ghemm, Daniel Walsh, was spreading it around with a front-end loader.

The tail gate on the dump truck in question was held in place by two hinges, one on each side of the top edge of the tail gate. Each hinge consisted of a pin which passed through rings on the truck and the tail gate. As Carlson raised the bed of the truck to dump the gravel, Reader noticed that the pin on the right hinge had slipped out, leaving the gate sagging from the left hinge. Reader instructed Carlson to drive away from the edge of the excavation. As the truck moved forward, the ring on the top right corner of the tail gate caught under the right side of the back end of the bed of the truck.

The parties are in substantial disagreement as to what happened during the next few moments. Reader testified that when he saw Walsh drive up in the front-end loader, he waved him away. Reader then turned to the truck and tried to free the gate by hand. He had just freed the tail gate when the bucket of the front-end loader hit the gate. The impact pushed the

tail gate back under the truck, lifting the truck and catching Reader's right hand between the tail gate and the bed of the truck. Reader screamed to Walsh to lower the bucket, but the loader continued to lift for a short time. His right thumb nearly severed, Reader drove to the hospital to be treated.

Walsh testified that when he saw the tail gate hanging from one hinge he parked the front-end loader and walked over to Reader. Reader asked Walsh to bring the loader up and to lift the tail gate. Walsh agreed. Reader apparently stood by the truck with his right hand on the tail gate giving signals to Walsh with his left hand. Walsh advanced the loader toward the back end of the truck in accordance with those signals. The front end of the loader and some canopy bars blocked Walsh's vision so that he could see neither the tail gate nor Reader's right hand. Reader signaled Walsh to roll the bucket a little and to lift it up in order to place the teeth under the sagging gate. Reader suddenly screamed that his hand was caught and for Walsh to lower the bucket. Walsh lowered the bucket immediately and backed the loader away from the truck.

Reader filed suit against Ghemm alleging that he was injured through the negligence of Walsh, Ghemm's employee. In its answer, Ghemm raised the defense that Walsh was performing a special service for Reader and was thus Reader's servant. The essence of this defense is that Ghemm asserts that it can not be liable under *respondeat superior* to Reader for the actions of Walsh since under the loaned servant doctrine Walsh was Reader's servant.

Over Reader's objection, the trial court advised the jury of this defense in its Instruction 28:

> If you find that at the time of the accident Dan Walsh was performing a special service for Charles Reader, with the permission of Ghemm Company, and was acting completely under the direction and control of Mr. Charles Reader you cannot find against Ghemm Company even if you do find that Mr. Walsh was negligent.
>
> You are further instructed that this defense is an affirmative defense, and if it has not been established by a preponderance of the evidence, your finding must be in Plaintiff's favor on that issue.

In answering the special questions propounded to them, the jury concluded that Walsh was performing a special service for Reader under Reader's direction and control and outside the scope of Walsh's duties as an employee of Ghemm. This conclusion being dispositive of the case under the trial court's instructions, the jury returned a verdict for Ghemm. Reader moved for a new trial alleging error in Instruction 28 and in the special questions submitted to the jury concerning the loaned servant doctrine. The trial court denied this motion.

These facts present questions of law not yet resolved in this jurisdiction.

 Reader argues that the trial court erred in that the evidence was insufficient to support an instruction on the loaned servant doctrine and that the instruction given was confusing and incorrect.[1]

---

1. Reader has adequately preserved his right to urge error in the instruction. Reader objected to the instruction as given:

 [W]e object to the instruction [28] because we think it does not correctly state the law. We believe, for example, as we have stated earlier in chambers, that the law is that even where employer [number] one permits his servant to work for employer [number] two as long as employer [number] one reserves the

 ultimate right of control over the servant employer [number] one remains responsible for the negligence of that servant.

 Reader also proposed an instruction on the loaned servant doctrine. His requested instruction was no better than the instruction given in terms of the concept of control, but we feel that his failure to request a correct instruction does not preclude his raising the issue on appeal. His objection is all that is required in

The loaned servant doctrine has been stated as follows:

A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others.[2]

Since liability is to be predicated upon some particular act or acts, the decisive question is whether or not the servant has been loaned as to those particular acts.[3] The test applied to determine if a servant has been loaned by his master to another is frequently stated to be one of control,[4] or the transfer of control.[5] The control which the borrowing master must acquire for the servant to become loaned is not merely control over the servant's specific acts, but rather control in a broader sense. The California Court of Appeals has discussed this distinction as follows:

The existence of the right of control over the employee is the critical test of liability for his acts. It is the right to exercise control rather than the mere fact of its exercise which is decisive. Peters v. United Studios, Inc., 98 Cal. App. 373, 277 P. 156 (1929). In [Billig v. Southern Pacific Co., 189 Cal. 477, 209 P. 241 (1922)], it is said that the power of control does not exist in a special employer in a situation where he has no voice in the selection or retention of the negligent employee. And in reference to the general employer, the court in [Moss v. Chronicle Publishing Co., 201 Cal. 610, 258 P. 88 (1927)], quoted from 39 C.J., page 1275, the following passage: " 'To

escape liability, the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; *and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary co-operation where the work furnished is part of a larger operation.' "[6]

Such a distinction is inherent in the loaned servant doctrine: in order to be a loaned servant, one must become the servant of the borrowing master. Thus the factors which determine whether or not a person is a servant must be considered.[7] Section 220(2) of the Restatement (Second) of Agency lists the following as among those factors:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

order to comply with Rule 51(a), Alaska Rules of Civil Procedure. Reader's oral objection was sufficient to put the court and opposing counsel on notice as to the defect of the instruction given. *Cf.* Pepsi Cola Bottling Co. v. Superior Burner Service Co., 427 P.2d 833 (Alaska 1967).

2. 1 Restatement (Second) of Agency § 227 (1957).

3. *Id.*, comment a at 501. Cited with approval, Nepstad v. Lambert, 235 Minn. 1, 50 N.W.2d 614, 621–622 (1951); J.

A. Robinson Sons, Inc. v. Wigart, 431 S.W.2d 327, 330 (Tex.1968).

4. *E. g.*, J. A. Robinson Sons, Inc. v. Wigart, 431 S.W.2d 327, 330–331 (Tex. 1968); Annot., 17 A.L.R.2d 1388, 1394 (1951).

5. W. Seavey, Law of Agency § 86 (1964).

6. Lowell v. Harris, 24 Cal.App.2d 70, 74 P.2d 551, 556 (Cal.App.1937) (emphasis added).

7. 1 Restatement (Second) of Agency § 227, comment c (1957).

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Control over the details or specifics of the work is but one of the factors to be considered, but control in the broader sense is at the very heart of the master-servant relationship.[8]

The cases dealing with the loaned servant problem are confusing in their lack of consistency. As has been aptly stated, "not only are the holdings as between different jurisdictions inconsistent and irreconcilable, but the holdings within any one jurisdiction are vulnerable to the same charge."[9] Justice Cardozo noted that the problem "is beset with distinctions so delicate that chaos is the consequence."[10] This confusion arises partly because the existence of the master-servant relationship is a question of fact for the jury.[11]

■ We agree with the rule that where the facts are in dispute the question whether a servant has been loaned must be determined by the jury under appropriate instructions.[12] Here the facts were in dispute, and the matter properly went before the jury. But we feel that the instruction given on the loaned servant doctrine was so inadequate as to require reversing the judgment and remanding for a new trial. Under the instruction, the jury could only have considered the more limited form of control. A proper instruction should state that the putative servant must satisfy the requirements of becoming a servant of the borrowing master in order for the loaned servant doctrine to apply. The instruction should then provide the jury with those factors which should be considered.[13] Simply to tell the jury that the test is one of "direction and control" without amplifying on those terms and without differentiating between control of the mechanical details of a task and the overall control required in a master-servant relationship, is particularly erroneous here where, by the nature of the task, Walsh was entirely dependent upon Reader for directions. Walsh's vision was obstructed by the front end of the loader and the canopy bars—he could do nothing but follow Reader's hand signals. The error lies in that control of this nature is not dispositive of the issue, but rather only one of the factors properly to be considered.

Accordingly, we reverse the judgment and remand for a new trial.

Reader raises two further contentions of error which should be discussed in order to clarify the issues on remand.

■ Reader argues that it was error for the trial court to allow counsel for Ghemm to comment in his closing argument on Reader's failure to call Carlson or Edman as witnesses. Counsel for Ghemm argued as follows:

I'm going to mention a few of the things that I'd like you to consider. The Judge will instruct you that evidence is not to be estimated or is to be estimated not only by its intrinsic weight, that means by its real worth, but also according to the evidence which is in the power of one side to produce and of the other to contradict, and therefore if weaker

8. *Id.*, § 220(1).

9. Smith, Scope of the Business: the Borrowed Servant Problem. 38 Mich.L.Rev. 1222, 1228 (1940).

10. Cardozo, A Ministry of Justice, 35 Harv.L.Rev. 113, 121 (1921).

11. Annot., 17 A.L.R.2d 1388, 1394 (1951).

12. 1 Restatement (Second) of Agency § 227, comment *a* (1957); Nyman v. Mac-

Rae Brothers Construction Co., 69 Wash. 2d 285, 418 P.2d 253, 255 (1966); Davis v. Early Construction Co., 63 Wash.2d 252, 386 P.2d 958, 962 (1963).

13. The factors listed in § 220(2) of the Restatement (Second) of Agency would provide a start. Those factors which would have no bearing on the case could be deleted; others which might be relevant could be added.

and less satisfactory evidence is within the party, the evidence should be viewed with mistrust. What does that mean? That means that if someone comes to this court and asks for a lot of money they have a duty to produce the best evidence, the best possible evidence that's available. Now you should ask yourselves where are Vern Carlson and Axel Edman?

Reader's objection was overruled by the court. We hold that the trial court did not err in overruling that objection. We agree with the court in Tex-Jersey Oil Corp. v. Beck that,

[n]o good purpose would be served by reviewing the great multitude of improper argument cases which abounds in the law books. Since a very early date it has been held that counsel may comment in argument on the failure of the opposite party to call a witness employed by him. The right to such comment has not been conditioned on the unavailability of the witness to the party so commenting, or on the employment of the witness at the time of trial. [citations omitted.][14]

█ Second, Reader argues that the trial court erred in overruling his objection to certain allegedly prejudicial statements made by counsel for Ghemm in his closing argument. The statements objected to were as follows:

All of you know people who have been hurt [but] have not received money. All of you know of people who were hurt out on the ice, injured much more seriously * * *. People who are injured out on the ice, who received nothing. People who are injured in hunting accidents, people who are injured in car accidents, people who are injured in many ways * * *. So not everyone, not everyone who's hurt is entitled to money. It would be nice if they were because Lord knows it's a sad thing when a person is hurt. But unfortunately, the law doesn't work that way. It just doesn't give money to people for getting hurt, unless they're hurt through someone else's fault, and they were reasonably careful themselves.

We have concluded that this was a reasonable means of illustrating to an Alaska jury that under our legal system plaintiffs are to be compensated for injuries only upon a finding of fault on the part of defendants.

The judgment is reversed and the case remanded for a new trial.

ERWIN, Justice (dissenting).

I dissent from that portion of the majority opinion which holds that this case must be reversed for an error in instructions. I believe that any such error was waived through appellant's failure to properly present his objections to the trial court as required by Civil Rule 51(a).

In this case the borrowed servant doctrine was raised in appellee's answer and was his primary defense at trial. The pretrial order of May 19, 1969, ordered that all requested instructions be presented at the beginning of the trial, yet appellant presented no suggested instructions or legal memoranda on the definition of a borrowed servant. He presented only a single requested instruction which did not even mention the doctrine of borrowed servant.[1]

14. 157 Tex. 541, 305 S.W.2d 162, 167, 68 A.L.R.2d 1062, 1069 (Tex.1957). Annot., 68 A.L.R.2d 1072 (1959).

1. The requested instruction reads as follows:

The defendant Ghemm Construction Company has been sued on the theory that it was the employer of Dan Walsh on July 7, 1967, and that Dan Walsh was acting as agent (or employee) of Ghemm Construction Company within the scope of his employment at the time the accident occurred.

If you find that Dan Walsh was not negligent, or if he was negligent but that his negligence was not a proximate cause of any injury to plaintiff (or if you should find in favor of the defense of contributory negligence), then of course it would not be necessary to consider the question of agency because in that event the defendant could not lawfully be held liable even if agency existed.

Appellant did object to the borrowed servant instruction given below on the general ground that it was not a proper statement of the law. However, such a general objection is particularly noninformative to the trial judge who is called upon to instruct on the law. It simply does not meet the requirements of Civil Rule 51(a) which provides in part:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, *stating distinctly* the matter to which he objects and the grounds of his objection. (emphasis added)

We have construed this section to require specific objection in criminal cases before claimed error in the instructions will be considered on appeal.[2] There is no compelling reason to relax this requirement in civil litigation where there are even greater opportunities to refine the issues before trial.

For the Rule 51(a) procedure to function properly, a substantial burden must be imposed on counsel to present specific objections. Otherwise, the trial judge will be unable to adequately review the objection and consider the argument made in formulating jury instructions.

Under the provisions of the Second Restatement of Agency,[3] the instruction given was not such plain error as should lead to this court's intervention in the absence of a proper objection at trial. I would, therefore, affirm the judgment below.

> But if you should find that Dan Walsh was negligent, and that his negligence was a proximate cause of injury to plaintiff (and that the evidence does not support the defense of contributory negligence) then you must decide whether at the time of the accident Dan Walsh was acting within the scope of his employment.
>
> If you find either that Dan Walsh was not then the agent (or employee) of the defendant, or, if the agent (or employee), that he was not acting within the scope of his employment, then your verdict must be in favor of the defendant; but if you find that Dan Walsh was acting as

agent (or employee) of the defendant and within the scope of his employment and if you will have found in plaintiff's favor on the other issues mentioned in this instruction then you [sic] verdict must be for the plaintiff.

2. Pope v. State, 478 P.2d 801, 805–806 (Alaska 1970), reh. denied 480 P.2d 697 (Alaska 1971). *See also*, Bakken v. State, Op. No. 728, 489 P.2d 120, at 125 (Alaska, 1971) (Erwin, J., dissenting).

3. Restatement (Second) of Agency § 227 (1958).