Lynn Marie **STERUD, personal representative of the Estate of Gary Allen Sterud, deceased, and Irene Littlefield, personal representative of the Estate of Frank Littlefield, deceased, Appellants,**

v.

**CHUGACH ELECTRIC ASSOCIATION, Appellee.**

No. 4612.

Supreme Court of Alaska.

Feb. 11, 1982.

---

Lloyd V. Anderson, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Anchorage, and Chancy Croft, Croft, Thurlow & Duggan, Anchorage, for appellants.

Patricia L. Zobel, Merdes, Schaible, Staley & DeLisio, Inc., Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.*

BURKE, Justice.

Chugach Electric Association (hereinafter Chugach) operates a large generating facility at Beluga, Alaska, approximately forty air miles west of Anchorage. In 1975, Chugach was expanding the plant and had contracted with Maynard Smith to perform some of the work.

Smith and Chugach entered into two distinct types of contractual arrangements during 1974–1975. For some jobs, Smith operated under a cost-plus contract to provide labor only, with Chugach furnishing supervision and materials. In others, Smith had fixed-sum contracts, and furnished his own superintendents and management.

In October, 1975, Smith bid for and obtained a fixed-sum contract to construct a steel building at Beluga. Two ironworkers, Bernard Hansen and Gary Sterud, were hired to work on that project. A third man, Frank Littlefield, was hired to work as a millwright on a related job, the installation of a turbine and generator in the steel building at Beluga. On the latter job, the record is ambiguous concerning whether Smith provided only labor, with Chugach taking responsibility for supervision and engineering.

The work site is remote, accessible only by air. Chugach furnished living quarters for its own employees and for persons hired by Smith. Chugach does not own the private airstrip at Beluga, but was authorized to use it by its owner. Under his steel building construction contract with Chugach, Smith was responsible for transportation to and from the site on that job. His workers flew to and from Anchorage on chartered flights.[1] Travel time, when these charters were used, was paid time.

Smith placed Hansen in charge of the building construction. Hansen did not live in Beluga, but commuted to the job site from Anchorage in his own airplane. Occasionally, he allowed workers to travel with him, and he frequently carried tools or supplies from Anchorage to Beluga, or paperwork the other way.

One Saturday night in November, 1975, Sterud and Littlefield flew to Anchorage with Hansen. On their return flight the next morning the plane crashed and all were killed.

A lawsuit was brought by the personal representatives of Sterud and Littlefield against Chugach, Smith and Hansen's estate. As against Chugach, the suit alleged independent negligence in allowing Hansen's flights and vicarious liability for Hansen's and Smith's negligence.

Chugach moved for summary judgment, arguing that it committed no affirmative act giving rise to a duty of due care owed to Sterud or Littlefield and that it was not liable for Hansen's and Smith's alleged negligence because neither was its employee. The superior court granted the motion and certified it as final pursuant to Civil Rule 54(b). This appeal followed. We affirm.

Sterud and Littlefield present three legal theories under which Chugach may be liable. First, they argue that Smith and Hansen were employees of Chugach, and that Chugach is therefore liable for their negligence under the doctrine of respondeat superior.[2] Second, even if Chugach was not, for purposes of respondeat superior, the em-

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11 of the Constitution of Alaska and Alaska R.Admin.P. 23(a).

1. The record is not clear concerning who chartered the aircraft, but it appears that Smith was responsible for charters for his personnel

and Chugach handled arrangements for its workers.

2. Sterud does not expressly claim in his brief that Hansen was an employee of Chugach. This was, however, the allegation made in the complaint. He also made this argument to the superior court.

ployer of either Hansen or Smith, they maintain that by retaining control over part of the work that it entrusted to an independent contractor, Chugach is subject to liability for physical harm to others to whom a duty of care is owed, caused by its failure to exercise its control with reasonable care.[3] Finally, they contend that Chugach gratuitously assumed a duty of care in exercising control over the use of the airfield, and that it breached this duty by allowing Hansen's flight and/or his ferrying of passengers.[4] Sterud and Littlefield claim that there are material facts in dispute with respect to each of these theories and that summary judgment was therefore improper. Alaska R.Civ.P. 56(c).

### A. *Vicarious Liability: Respondeat Superior*

For purposes of this theory, the negligence of Hansen or Smith is assumed, and the argument hinges on whether Smith and Hansen were independent contractors.

The nature of the relationship between a worker and an employer is determined by the test described in the Restatement (Second) of Agency § 220 (1958),[5] which lists a group of ten factors relevant to the distinction.[6] The Restatement provides that while the existence or nonexistence of a master-servant relationship is ordinarily a jury question "[i]f the inference is clear that there is, or is not, a master and servant relation, it is made by the court. . . ." Restatement (Second) of Agency § 220, Comment c to subsection (1) (1958).

▰▰ The parties agree that the most important of these factors is the right to control the manner of performance of the work. *See Reader v. Ghemm Co.*, 490 P.2d 1200, 1204 (Alaska 1971); Restatement (Second) of Agency § 220(2)(a), Comment d (1958). As to this factor, the evidence is clear that Chugach exercised no control over the manner and means by which the steel building erection job was performed.[7] The only other relevant factor suggested by Sterud and Littlefield is Chugach's ability to order any worker fired. We do not think this factor, standing alone, is sufficient to raise a reasonable inference that a master-servant relationship existed with respect to

**3.** *See* Restatement (Second) of Torts § 414 (1965).

**4.** *See generally Adams v. State*, 555 P.2d 235 (Alaska 1976).

**5.** We adopted this test for purposes of determining borrowed servant questions in *Reader v. Ghemm Co.*, 490 P.2d 1200, 1203–04 (Alaska 1971). In *Laborers & Hod Carriers Union Local 341 v. Groothuis*, 494 P.2d 808, 810 n.6 (Alaska 1972), the Restatement test was extended to all common law actions. In workers' compensation cases, a different rule applies. *See Searfus v. Northern Gas Co.*, 472 P.2d 966, 968–70 (Alaska 1970).

**6.** Restatement (Second) of Agency § 220(2)(a)–(j) (1958) provides:

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.
*Id.*

**7.** Chugach submitted affidavits that it had no control over Smith's employees and that Smith had full control of the project. It points out that the testimony relied on by the plaintiffs was expanded upon elsewhere to establish that Smith acted as a labor broker for only some of the work done at Beluga, and that the steel building erection was a job over which he had complete managerial control.

the steel building erection under the circumstances of this case.[8]

■ With respect to the second contract, the turbine placement, Smith may have been only a labor broker. Although the record does contain evidence which could support an inference that Smith was an employee of Chugach when he acted as a labor broker,[9] this does not preclude the granting of summary judgment. Chugach can be held vicariously liable for Smith's negligence only insofar as the negligent conduct occurs in the course and scope of Smith's employment as a labor broker. *See generally Luth v. Rogers & Babler Constr. Co.*, 507 P.2d 761 (Alaska 1973) *Fruit v. Schreiner*, 502 P.2d 133 (Alaska 1972). In this case, Smith's alleged negligence related to his authorization of and control over Hansen's flights.[10] It is clear, however, that Smith's control over Hansen and his flights arose solely out of his capacity as an

independent contractor in charge of the building construction. Nothing in Smith's duties to Chugach as a labor broker related to his control over Hansen. Thus, summary judgment was proper even though a factual question exists with respect to whether Smith, in his capacity of labor broker, operated as an employee or an independent contractor.

### B. *Direct Liability: Retained Control*

■■ An employer is not shielded from liability for the negligence of an independent contractor where he retains sufficient control over the work and the injury results from his failure to exercise that control with reasonable care.[11] Sterud and Littlefield argue that since Chugach controlled access to the worksite it is therefore liable for any negligence in its exercise of that control.

8. Characterization of the relationship between Chugach, Smith, and Hansen is ordinarily a problem for the trier of fact. It was therefore initially incumbent upon Chugach to affirmatively demonstrate, by affidavit or otherwise, that Smith and Hansen were independent contractors and not employees. This it did. The burden then fell upon Sterud and Littlefield to establish facts from which it might be reasonably inferred that Smith and Hansen were employees. *Webb v. City & Borough of Sitka*, 561 P.2d 731, 735 (Alaska 1976); *Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 778–83 (Alaska 1973). There was no evidence to indicate that Chugach retained control over details of the labor involved in erecting the steel building. Sterud and Littlefield may not, in attempting to meet their burden, rely on inferences for which they have provided no evidentiary support. *Braund, Inc. v. White*, 486 P.2d 50, 54 (Alaska 1971). The mere fact that the question as to whether a particular relationship is that of master-servant or employer-independent contractor is ordinarily a factual one does not mean that it cannot be decided by the court on a motion for summary judgment, where the moving party meets its burden and the non-moving party does not adequately respond.

9. It does appear more than likely, however, that Smith was an agent-independent contractor, not a servant, even in his labor broker capacity. *See* Restatement (Second) of Agency § 250 (1958).

10. The plaintiffs' complaint alleged that Smith was negligent in failing to warn his employees of the danger of flying with Hansen. Just what

this alleged danger was is entirely speculative. The flight to Beluga from Anchorage is relatively short, over essentially flat terrain. There is nothing in the record indicating that flying with Hansen involved any particular danger, apart from the danger common to any flight. Hansen was a licensed pilot, qualified to fly the aircraft in question, with no apparent history of negligent or careless conduct while acting as a pilot.

11. *See Hobbs v. Mobil Oil Corp.*, 445 P.2d 933 (Alaska 1968). In *Hobbs*, we adopted Restatement (Second) of Torts § 414 (1965), which sets out this rule of "retained control" liability. 445 P.2d, at 934. In the Restatement, liability of this nature is viewed as "direct" rather than as "vicarious." Restatement (Second) of Torts § 414, at 371–72, 394–95 (1965); *see State v. Morris*, 555 P.2d 1216, 1218 (Alaska 1976). Liability under the "retained control" theory can arise even though the employer is not in a master-servant relationship. "Retained control" exists where the relationship is that of an independent contractor, in circumstances where some retained control exists, but not enough to establish a common law master-servant relationship. It can also arise where an amount of retained control sufficient to establish a master-servant relationship exists, but only for some "part" of the work. *Compare* Restatement (Second) of Torts § 414, Comment a (1965) *with* Restatement (Second) of Torts § 414, Comment c (1965).

Part of the work entrusted to Smith was the transportation of the workers to the Beluga site. We agree with the plaintiffs that a factual question was presented both as to how this work was performed, and as to exactly how much control Chugach retained over its performance. However, we do not find these matters to be material questions of fact so as to preclude summary judgment. Rather, it is apparent that Hansen's flight was unrelated to the routine transportation of employees. Hansen was not engaged in the business of his employer at the time of the accident, and Sterud and Littlefield flew with Hansen at their own initiative, on their own time, and not as part of the employer-provided service. Since any retained control over the work was factually unrelated to the accident, Chugach is not liable under this theory.

C. *Direct Liability: Assumption of Duty*

Sterud and Littlefield claim that Chugach gratuitously assumed a duty "to ensure the safety of access to the Beluga worksite." They argue that Chugach, therefore, is liable to persons injured by its failure to fulfill that duty with reasonable care.[12] The plaintiffs would find such a duty in Chugach's agreement with the owner of the airfield that Chugach was responsible for compliance of its aircraft contractors with applicable laws, regulations, and safety standards. In addition, they point to the deposition testimony of Chugach's general manager to the effect that he became aware of Hansen's use of the airfield approximately three days before the fatal crash and would have told Hansen to discontinue use of the field but was unable to do so before the accident.

As to both purported assumptions of duty by Chugach, we conclude that they lack a sufficient causal relationship to the accident to support a finding of liability. The accident occurred far from the airfield, during a flight that began in Anchorage, and was unrelated to any possible lack of safety at the Beluga airstrip. In addition, the record indicates that Chugach had no knowledge that Hansen was transporting other workers between Beluga and Anchorage, and thus had no duty to warn others of possible hazards in making flights with him.[13]

AFFIRMED.

COMPTON, J., not participating.

RABINOWITZ, Chief Justice, dissenting.

I believe that each of the claims appellants have advanced in this appeal requires resolution of genuine issues of fact and therefore dissent from the majority's affirmance of summary judgment in favor of Chugach.

As to the question of vicarious liability, I think that the record provides support for the conclusion that Smith knew or should have known that employees traveled to and from Anchorage in Hansen's plane.[1] That conclusion gives rise to the possibility that Smith was, or should have been, aware of dangers involved in flying in Hansen's aircraft and negligently failed to warn Littlefield of those dangers. Because Chugach could be held vicariously liable for negligent acts committed by Smith in his "labor broker" role, I believe that Littlefield's representative has raised a genuine issue of fact as to Chugach's liability under the doctrine of *respondeat superior.*

---

12. *See Adams v. State*, 555 P.2d 235 (Alaska 1976).

13. *See* note 10 *supra.*

1. Gary Center, Smith's superintendent, stated: Well, I don't recall exactly when you're talking about but I knew [Hansen] was carrying two men in his plane when he flew because I was told by the man that called me. Prior to that time I don't know specifically if he was carrying any but I can assume that he was because that many men over there, and when there's a plane going back and forth, they invariably jump on it if they can and come in for a night.

According to another employee at the construction site, "you could always come in with Barney [Hansen] if he wasn't loaded." Further testimony indicated that "it was pretty common knowledge on the job site that Barney [Hansen] was flying in and out carrying people with him."

Part of the work entrusted to Smith, as independent contractor, included transportation of the workers between Anchorage and the remote construction site. As indicated above, *see* note 1 *supra*, I think the record contains support for the claim that Hansen was relied upon to provide some of the necessary transportation services. Since, as the majority observes, a factual question is presented as to the degree of control Chugach exercised over the transportation of workers to and from the construction site, I believe that appellants have raised issues of fact sufficient for them to avoid summary judgment on the claims based on section 414 of the *Restatement*.[2]

Finally, as to the assumption of duty theory, I believe the inference drawn by the majority to the effect that unsafe practices at the airfield could not have been causally related to the accident is unwarranted. I cannot agree that, as a matter of law, there could not have been a causal connection between Chugach's purportedly negligent operation of the airfield and the accident in which Hansen, Sterud, and Littlefield died. If, as we must assume for purposes of this appeal, Chugach assumed a duty to operate the airfield in a safe manner, appellants are entitled to a determination, by the trier of fact, of whether a breach of that duty was a cause of the accident.

I would reverse the superior court's entry of summary judgment and remand for trial of the factual issues raised by appellants in their claims against Chugach.

---

**2.** Restatement (Second) of Torts § 414 (1965) reads:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.