[Civ. No. 10961.   Third Dist.   Jan. 26, 1966.]

DONALD A. MART, Plaintiff and Respondent, v. CHARLES W. RILEY, SR., et al., Defendants and Appellants.

Healy & Robinson, Newton & Braun, Rodrick L. Robinson and William J. Braun for Defendants and Appellants.

Randall J. Presleigh, Kiernan & Misciagna, Carlton & Asbill, Daniel S. Carlton and N. A. Misciagna for Plaintiff and Respondent.

VAN DYKE, J.*—This appeal is from a judgment entered on a verdict awarding damages to plaintiff Donald A. Mart for personal injuries alleged to have been suffered by him through the negligence of defendants-appellants. Plaintiff-respondent was a laborer employed by M. W. Brown, a highway contractor, then engaged in building a county road in southwestern Shasta County. The work required that a seal coat of oil be applied to the road surface, after which sand was to be spread over the oil. For the performance of this work appellants rented to Brown a dump truck and furnished a driver for its operation. When the truck arrived at the site of the work, Brown attached a gasoline-driven sand spreader to the tailgate of the truck. As a means of getting the sand into the spreader Brown cut a hole about a foot square in the

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

tailgate. Brown's plan of operation contemplated that sand would move through the hole into the hopper of the spreader; and to facilitate and regulate the supply of sand one or two men with hand shovels would work in the truck near the tailgate, shoveling sand through the hole. There was much evidence that this was a common and accepted method of doing the work. The operation also involved driving the truck slowly backward along the oiled surface to prevent the wheels from running over unsanded oil. The truck was first loaded with about 14 tons of sand. Respondent and a laborer named Castillo were assigned by Brown's foreman to work with the driver. There was evidence of the following facts: When sanding began Castillo was stationed in the bed of the truck which had been tilted at a slight angle to facilitate the movement of sand. Respondent and foreman Gage were on the ground moving alongside the truck. After about 300 yards of sanding, Castillo was unable to keep the spreader supplied and the foreman ordered respondent to get into the truck bed to help. To enable him to do this, the truck stopped and started up again when he had taken his position on the truck. The truck started with a jerk, the truck bed rose suddenly to an angle of about 45 degrees. The load of sand shifted toward the tailgate which failed to hold and respondent and the load of sand avalanched down onto the roadway. As he went down respondent came in contact with the revolving blade of the spreader. He suffered serious injuries.

The foregoing history of the accident was that of several eyewitnesses. The driver's version was much in conflict therewith. He said that when he was sent to the job by appellants with his truck, he did not know a spreader was to be attached and had never used one. But when told by Brown this was to be done and that Brown had so arranged with appellants he made no objection. When the spreader had been attached and his truck loaded he proceeded to back along the road with the truck bed tilted to cause sand to flow toward the hopper. He said he did not know that either respondent or Castillo were to be working in the truck shoveling sand and would not have allowed it if he had known; that he never saw them there. He denied any jerking of the truck, denied any sharp tilting. He gave no explanation of why the sand swept down, tore out the tailgate and deposited the sand and respondent on the road. He did say that as the truck approached an intersection that had already been sanded Gage, Brown's foreman, who had been running along ahead of the truck to direct him as to speed, yelled at him to speedup to prevent double sanding of

the intersection; that he speeded up across the intersection, then took his foot off the accelerator, the truck lurched and he saw the sand hit the road.

It appears from the evidence that it was the sudden jerk or lurch of the truck and, as some testified, the sudden sharp elevation of the bed of the truck, together with the failure of the tailgate to hold, which caused respondent's injuries. Whether one, or the two in combination, is not material here because both are chargeable to appellants as being caused either by negligent driving or defective condition of the truck, or by both. Under the circumstances the rule res ipsa applies.

Respondent received workmen's compensation benefits from the insurance carrier for Brown and brought this action against appellants as third party tortfeasors responsible for his injuries. Brown's insurance carrier intervened.

Errors asserted on appeal revolve around instructions given, refused or modified and error in the receipt of evidence.

A pivotal question here is who, at the very time of the accident and in respect to the driving and operation of the truck, was the employer of the truck driver? As to this, we think there can be no dispute. Appellants Riley were the general employers of the truck driver at all times. "[W]hen a master hires out, under a rental agreement, the services of an employee for the operation of an instrumentality owned by the master, together with the use of the instrumentality, without relinquishing to the hirer the power to discharge such servant, to go where and perform such work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to do in the performance of the work, the servant, as the operator of the instrumentality employed in the doing of the work, remains, in the absence of an agreement to the contrary, the servant of the general employer insofar as concerns a manner and method of operating the instrumentality. . . ." (*Billig* v. *Southern Pac. Co.*, 189 Cal. 477, 485-486 [209 P. 241].)

A case similar to this one factually is *McComes* v. *Al. G. Barnes Shows Co.*, 215 Cal. 685 [12 P.2d 630], where the defendant hired out an elephant and trainer to a movie studio. The trainer was negligent in securing a howdah on top of the elephant and as a result an actress was injured. The court said at page 691: ". . . If the uncontradicted evidence shows as a matter of law that Nance [the elephant trainer] was then in the employ of his general employer, the appellant, and that his special employer, the Wm. Fox Studio, had no

direction or control over him in respect to the particular services out of which the accident arose, then the question as to liability for his negligence was not one for the jury.''

■■■  The physical facts of the accident here speak clearly as to the cause of respondent's injuries. It was the sudden tilting of the truck bed, aided, perhaps, by the jerking of the truck. Without the sudden tilting of the truck bed the accident could not have happened. The sand was somewhat damp and did not flow readily. The truck had been moving with the bed tilted slightly, estimated at about 5 degrees, which would facilitate the motion of the sand toward the tailgate. But unless the truck bed had been tilted to a high degree the sand could not have avalanched down against the tailgate and, having broken it open, swept down onto the road bearing respondent with it. Proper control of this tilting was the duty and function of the driver. The driver was shown, without conflict, to have been an experienced driver of dump trucks, and the evidence is without conflict that he went along with the truck under the rental contract as the employee of appellants, charged with the duty of operating the truck. He was operating the truck at the instant of the accident. It is true that as the truck moved backward over the oiled road surface Brown's foreman, going along beside the truck, gave signals to the driver as to the speed the truck was to proceed and as to increased tilting of the truck bed, nevertheless, these things did not work a change of employers. As said in *Doty* v. *Lacey*, 114 Cal.App.2d 73, 79-80 [249 P.2d 550] : ''. . . The giving of signals . . . was not the giving of orders, but of information; and obedience of the signals shows cooperation rather than subordination, and is not sufficient to show there has been a change of employer. . . .'' We think it clear from the record that throughout the sanding operation the truck driver was the employee of appellants as to the operation of the truck; that nothing done by Brown made him the driver's special employer at any time. In this connection we note that there is no evidence that the making of the hole in the tailgate weakened, or could have weakened, that structure and caused or contributed to its being torn out under the impact of the sliding sand.

■■■  Appellants complain of the giving of the following instruction at the request of respondent: ''Under the law of California an employer is charged with the negligence of his employee committed in the course and scope of his employment. Here the defendant, Knudson [the truck driver], was

the employee of Riley Brothers and was acting within the course and scope of his employment at the time of the accident in question. Thus if under all the instructions of the court you find that Knudson was guilty of negligence proximately contributing to the injuries of Donald Mart, such negligence is charged against the defendants, Riley Brothers." Under the facts of this case, as we have pointed out, this was a proper instruction. That the truck driver was the employee of appellants at the time of the accident and in the doing of that which caused the injury was not a jury question.

■ Appellants complain also of the giving of the following instruction requested by appellants and given by the court as modified: "If you believe that Knudson was directed by his original employer to render service under the control of Brown and that Brown was authorized to and did exercise authoritative control of the methods and details of the work, Brown thereby becomes a special employer. If Knudson thereafter is negligent such negligence is imputed to Brown as special employer." This instruction had no application to the facts. The evidence would not have supported a finding by the jury that Brown became the special employer of the truck driver. The instruction should not have been given. But it was more favorable to appellants than their rights required, and we fail to see where it could have caused any damage to them. The error was harmless.

■ Appellants allege error in the giving of the following instruction at the request of respondent: "In this case the defendants had the duty to exercise ordinary care in the sand spreading operation of the truck being operated by the defendants. This duty extended in favor of Donald Mart, one of the persons on the job. If the defendants failed to perform this duty and as a proximate result thereof such plaintiff suffered injury, the defendants are guilty of negligence." This instruction correctly stated the law as applied to the facts of the case. Concerning it appellants say: "This instruction . . . states, as a matter of law, that Riley was in charge of the sand spreading operation. . . ." But the instruction does not say that. It says appellants were in charge of the "sand spreading operation of the truck." And they were. They further state: "The jury, as a matter of fact, could have found that Riley was not in charge of any sanding or sand spreading operation and was in fact not negligent in relation to any activity at the scene of the accident." And that: "At the moment of the instant accident, Knudson [the truck

driver] was acting exclusively under orders of Brown in committing the unlawful . . . and negligent act that precipitated the accident. . . ." What we have already said disposes of these contentions.

■ Appellants allege error in that the court refused to give two instructions proffered by appellants and having to do with intervening causes. These instructions were properly refused. Under the evidence any negligence of Brown would not have insulated appellants from liability for their own neglect. Brown, as the employer of respondent, was charged with the duty of furnishing him a safe place to work and with refraining from sending him to work in an unsafe place. There was evidence that the fastenings of the tailgate were defective, that these defects were discernible, that they were known to appellants, through their upkeep men, when they sent the truck to the job, and that had the fastenings been properly maintained the tailgate would not have broken. The negligence of Brown, if any, in this aspect of the case was in his not having inspected and corrected the fastenings, or not having them corrected before stationing respondent on the truck bed.

The requested instructions were taken from BAJI No. 104-C and No. 104-C-1.

". . . An intervening cause is one which comes into active operation in producing the result *after* the negligence of the defendant. [Citing Rest., Torts, § 441.] 'Intervening' is used in a time sense; it refers to later events." (Prosser, Torts (3d ed. 1964) pp. 309-310.)

Under the facts here any negligence of Brown in re the condition of the tailgate could not have been an intervening cause efficient to insulate appellants from liability for their negligence in having furnished a defective truck. For that defect, an insecure tailgate, could not have caused or contributed to respondent's injuries without the negligence of the driver in operating the truck. As the trial court said in noting its reasons for refusal: "Alleged negligence of Riley, Brown, not sequential in time, in view of Knudson's control to time of injury." The instruction was properly refused.

Appellants charge that since Brown was the employer of respondent at all times he was under a duty to see to it that respondent had a safe place to work. The court instructed the jury as to this duty of Brown, and there was evidence that Brown had neither inspected these fastenings himself nor had anyone do it for him.

At the request of appellants the trial court instructed the jury that as the employer of respondent Brown had certain special duties defined in Labor Code section 6400 to the effect that every employer is obligated to furnish a safe place of employment for his employees. The court gave the instruction but modified it by deleting therefrom section 3414 of title 8 of the California Administrative Code which provides that employees shall not ride on top of loads that may dangerously shift, topple over or otherwise become unstable. It is true, as appellants contend, that a general safety order applies to all employers and in this case applied to Brown; that such safety orders are promulgated for the purpose of protecting the safety of employees and as such establish a standard of care for employers. Although research has not disclosed a judicial interpretation of this safety order, we think it clear that under circumstances here it had no application. The section reads as follows: "Riding Loads. Employees shall not ride on top of loads that may dangerously shift, topple over or otherwise become unstable. Employees shall be seated if riding on a load." We think the safety order in this aspect was concerned only with transportation of employees on top of loads that may shift, topple over or otherwise become unstable and did not apply here, where in order to do the work respondent and his companion were required to shovel sand into the hopper of the spreader. There was much undisputed evidence that this method of spreading sand with a spreader attached to the tailgate of the dump truck was, and for years had been, a standard and commonly accepted method of doing the work. Respondent was not "riding on top of the load" within the meaning of the safety order.

Appellants further object to several instructions based upon their claim that Brown was the special employer of the truck driver. What we have already said disposes of these contentions.

Appellants' final contention is that the court should have granted a mistrial because a question put to a witness by counsel for the intervening insurance carrier of Brown elicited a response that appellants had liability insurance.

The incident arose in the following manner: The driver denied on the stand that there was a pin missing from the tailgate latch mechanism. A prior statement made by him to an insurance investigator engaged by the intervener was introduced to impeach him. The driver had told the investigator that he had noticed the pin missing the day before the

accident. On the stand, however, he denied that he had made this statement to the investigator and said he had read the statement as taken down by the investigator. (He had signed the statement and initialed each page.) He claimed that he signed the statement in a hurry and that the investigator was overbearing.

The investigator was then called by the intervener. He was asked if, at the time the truck driver made the statement, he had indicated that he had given the information to anyone else. The answer was: ". . . He told me that he had given information to another insurance adjuster for his employer." We may assume that this answer informed the jury that Riley had insurance and there is abundant authority in California that intentional gratuitous references, either in the evidence or the argument, to the fact that a defendant carries liability insurance may be prejudicial misconduct justifying a reversal. (*Little* v. *Superior Court,* 55 Cal.2d 642, 645 [12 Cal.Rptr. 481, 361 P.2d 13].) When the incident occurred during trial a motion for mistrial was made and denied. In discussing the motion the court said: "[O]ver the years there has been a great deal of dither on the subject of insurance, and it has generally been held prejudicial to mention it. The rationale underlying that rule becomes attenuated by time in an age where practically everybody has insurance. I still believe, however, that it is error to drag it in wilfully and unnecessarily for no other purpose than to show that the defendant is protected. But I am inclined to think the rule now is that if the matter comes in to the case for some other reason or purpose in itself, that incidental reference to the fact of insurance would not be erroneous.

"Mr. Knudson here takes the position that this statement was elicited from him by some measure of duress incident to the time involved, and by some measure of haste and confusion on his own part. It would appear to be logical from that point of view to inquire if he had any experience in the giving or taking of statements, particularly pertaining to this matter. And while that is a rather incidental purpose, the reference is also so very incidental that I am inclined to think the appropriate thing to do is to ignore it completely.

"Motion for mistrial is denied. More so in view of the language that this was the adjuster for his employer, as it would be obvious that whether or not the employer carried liability insurance he certainly would carry compensation insurance."

We think the trial court's comment above quoted, made upon denial of the motion for mistrial, was pertinent, reasonable and well within the discretion of a trial judge ruling on such a motion at the trial. We think further that the ruling on the motion for new trial was well within the discretion possessed by a trial judge in ruling upon such a motion. In any event, we could not say that if error there was, the error under the constitutional provision was reversible.

The judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.

A petition for a rehearing was denied February 23, 1966, and appellants' petition for a hearing by the Supreme Court was denied March 22, 1966.