Cyril V. DORNAN, Plaintiff-Appellant,

v.

UNITED STATES of America, Third-Party Plaintiff, Appellee,

Oro Dam Constructors, Third-Party Defendant, Appellee.

No. 25-622.

United States Court of Appeals, Ninth Circuit.

May 1, 1972.

Rehearing Denied June 27, 1972.

---

Mark G. Steidlmayer (argued), Fred B. Ithurburn, of Changaris, Trezza, Ithurburn & Keeley, Yuba City, Cal., for appellant.

Paul Gary Sterling, Asst. U. S. Atty. (argued), John J. Meadows, Chief, Admiralty & Shipping Section, San Francisco, Cal., Dwayne Keyes, U. S. Atty., Fitzwilliam, Memering, Stumbos & DeMers, Sacramento, Cal., for appellee.

Before CHOY and GOODWIN, Circuit Judges, and PREGERSON, District Judge.*

ALFRED T. GOODWIN, Circuit Judge:

Dornan brought this Federal-Tort-Claims action against the United States for damages resulting from the alleged negligence of a government boat operator. The district judge held that, while the government's employee had negligently caused Dornan's injuries, that employee had not been acting within the scope of his employment with the United States when the accident occurred. Doran appeals. We reverse.

The facts are not in dispute. Dornan was employed as an iron worker by Oro Dam Constructors, who were engaged in the construction of Oroville Dam in California. In December 1964, severe flood-ing conditions endangered the project. A representative of Oro Dam Constructors asked the United States Army to provide a landing craft to assist in flood control operations in the vicinity of the dam. The Army furnished a landing craft, LCM–6512, operated by two federal employees, Willis and Nestor. The craft and its operators were provided without cost to the private contractor.

On December 24, 1964, an Oro Dam Constructors supervisor asked Willis to tow a beached J-boat into the reservoir. Willis attached a tow line from the LCM to the J-boat, and attempted to dislodge the J-boat by sudden acceleration to snap the slack out of the line. Dornan, who was at the rear of the landing craft, was thrown into the water. The court found Willis negligent in "jumping the line."

The court then held that the United States was not liable for the negligence of Willis because Willis was acting as the borrowed servant of Oro Dam Constructors at the time of the accident. The court entered a conclusion of law to the effect that Willis and Nestor "were doing the work of Oro Dam Constructors at the time of plaintiff's injury."

■ By the terms of the Federal Tort Claims Act, the United States has consented to be sued for injuries caused by the conduct of government employees who are acting within the scope of their employment. 28 U.S.C. § 1346(b).

■ Whether or not a particular act of negligence occurs within the scope of an employee's federal employment depends upon an analysis of the facts under the law of the place where the tort occurred. 28 U.S.C. § 1346(b). United States v. McRoberts, 409 F.2d 195, 197 (9th Cir. 1969), cert. denied, 396 U.S. 1014, 90 S.Ct. 551, 24 L.Ed.2d 505 (1970); Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955), reversing 215 F.2d 800 (9th Cir. 1954); Murphey v. United States, 179 F.2d 743 (9th Cir. 1950); Fries v. Unit-

---

* The Honorable Harry Pregerson, United States District Judge for the Central District of California, sitting by designation.

ed States, 170 F.2d 726, 730–731 (6th Cir. 1948), cert. denied, 336 U.S. 954, 69 S.Ct. 876, 93 L.Ed. 1109 (1949). The effect of the "borrowed servant" relationship in this case is thus a question of California law.

The district court recognized the relevance of California law, but in finding that Willis was "doing the work" of Oro Dam Constructors the court gave too little effect to the California rule concerning the impact of supervision and control in "borrowed servant" cases.

■ A general employer may lend an employee to do the work of a special (borrowing) employer, but so long as the employee is under the ultimate control of his general employer that employee remains the general employer's servant for the purpose of respondeat-superior tort liability. Billig v. Southern Pac. Co., 189 Cal. 477, 209 P. 241 (1922); Lowell v. Harris, 24 Cal.App.2d 70, 74 P.2d 551 (1937); Shaff v. Baldwin, 107 Cal.App.2d 81, 236 P.2d 634 (1951); Mart v. Riley, 239 Cal.App.2d 649, 49 Cal.Rptr. 6 (1966).

In *Billig*, the California Supreme Court enunciated the test which is applicable to cases where a general employer provides both an instrumentality and an operator to a special employer:

> " * * * [W]hen a master hires out, under a rental agreement, the services of an employe for the operation of an instrumentality owned by the master, * * * without relinquishing to the hirer the power to discharge such servant, to go where and perform such work as the hirer directs, the legal presumption is that * * * the servant, as the operator of the instrumentality employed in the doing of the work, remains, in the absence of an agreement to the contrary, the servant of the general employer in so far as concerns the manner and method of operating the instrumentality * * *." 209 P. at 244.

The government argues that the district court was bound by, and did in fact follow, Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1919), and Denton v. Yazoo & M.V.R. Co., 284 U.S. 305, 52 S.Ct. 141, 76 L.Ed. 310 (1932). In those cases, the Court inquired as to "whose work" was being performed by the servant when the negligent act occurred. However, the identification of "whose work" was being done supplies only a partial solution to the apportionment of liability under California law and, hence, under the Federal Tort Claims Act. *See* United States v. McRoberts, *supra*; Fries v. United States, *supra*.

■■ We begin with the presumption, under the *Billig* case, that the borrowed servant remains in the employ of the lender. We search the evidence in vain for facts which rebut this presumption. While the district court found that Oro Dam Constructors could and did direct Willis "where to go and what to do in the performance of the work" at the dam, Oro Dam Constructors did not undertake to tell Willis how to perform the work.

■ An Oro Dam supervisor gave Willis directions, but this fact does not work a change in employers. By following directions, Willis was merely cooperating with, rather than becoming subservient to, the "borrowing" employer. Doty v. Lacey, 114 Cal.App.2d 73, 249 P.2d 550 (1952); Mart v. Riley, supra.

■ Willis was not in continuous contact with his government superiors during his work at Oroville Dam, but this is not a controlling fact. Willis was operating equipment under circumstances which lent themselves to detached service. *See* Peters v. United Studios, 98 Cal.App. 373, 277 P. 156, 160 (1929), where the court noted that the right of control may exist without its exercise.

Finally, the power of Oro Dam Constructors to tell Willis that his services were no longer required did not tend to work a change in employers. This authority was at least shared with the government, and amounted to nothing more than a right to decide that the equipment which had been requested was no

longer needed. The United States, at all times, retained the exclusive power to discharge Willis from his federal employ, or to change the terms of his employment. Radich v. United States, 160 F.2d 616 (9th Cir. 1947); Lowell v. Harris, supra.

The government argues, citing no authority, that a servant operating gratuitously loaned equipment is somehow to be distinguished, for respondeat-superior tort-liability purposes, from a servant operating hired equipment. Perhaps the reason no case so holding has been found is that the notion is not one that commends itself to logical analysis. If a servant on the payroll of one employer is ordered by his employer to go help another employer without any consideration passing between the two employers, it would appear *a fortiori*, that the traveling servant remains primarily under the direction and control of his master who is paying his wages.

The government also argues that the question of the status of the negligent operator is a question of fact, thus invoking the rule that the trial court's decision is nonreviewable unless clearly erroneous. The workman's status would present a question of fact if operational facts were in dispute or if undisputed facts tended to rebut the presumption that Willis remained the servant of the United States. Umsted v. Scofield Eng. Const. Co., 203 Cal. 224, 263 P. 799 (1928); Peters v. United Studios, *supra*; Burns v. Jackson, 59 Cal.App. 662, 211 P. 821 (1922). However, there is no dispute concerning the material facts, and, as we have explained, the only reasonable inference that can be drawn from the undisputed facts is that Willis remained in the employment of the government while operating government equipment to assist a private employer during an emergency.

Notwithstanding the self-serving conclusions of government witnesses that Willis somehow became subject to supervision and control by the private contractor, the unrebutted presumption that Willis did not depart his federal employ is further supported by his expertise as a landing craft operator, Doty v. Lacey, *supra*, and by his complete control over the manner of operating the craft during the attempt to free the beached J-boat. Mart v. Riley, *supra*.

We must therefore hold, as a matter of California law, that Willis was not the loaned servant of Oro Dam Constructors. *Compare* Billig v. Southern Pac. Co., Lowell v. Harris, and Mart v. Riley, all *supra*, with Peters v. United Studios and Burns v. Jackson, both *supra*. Under the Federal Tort Claims Act, then, the United States is liable for Willis' negligent conduct.

Reversed, and remanded with instructions to make appropriate findings on the issue of damages.

CHOY, Circuit Judge (dissenting):

I respectfully dissent.

Unlike my brothers, I believe the question of whether Willis was a loaned or borrowed servant is one of fact, to be answered by the trier of the facts and to be reviewed by this Court under the clearly erroneous rule of Fed.R.Civ.P. 52(a). Restatement of Agency 2d § 220, comment c; United States v. Becker, 378 F.2d 319, 321 (9th Cir. 1967); Brucker v. United States, 338 F.2d 427, 428, n. 3 (9th Cir. 1964). In California this factual question may be determined by the court as a matter of law only when a single inference can reasonably be drawn from the facts. "Master and Servant," 32 Cal.Jur.2d § 12, p. 411. Unless no other reasonable conclusion is legally deducible from the evidence and any other holding would be so lacking in evidentiary support as to be reversible on appeal, the issue is one of fact, not of law. Umsted v. Scofield Engineering Construction Co., 203 Cal. 224, 263 P. 799, 800 (1928).

The uncontested evidence, contrary to my Brothers' assertion, permits not only the reasonable inference that Willis remained the Government's servant but also the equally reasonable inference

that he was a loaned servant controlled by Oro Dam Constructors (Constructors). The evidence also amply rebuts the presumption of retained control raised by Billig v. Southern Pacific Co., 189 Cal. 477, 209 P. 241 (1922). There being substantial evidentiary support for the District Court's conclusion, I cannot find it clearly erroneous.

The following facts, among others, amply rebut the *Billig* presumption and support the conclusion that Willis was a loaned servant:

1. Willis was doing Constructors' work at the time of the accident.

2. The Government had no idea what work Willis would be doing. It released him temporarily to Constructors to do any work. (Reporter's Transcript 80–81, 333).

3. Willis was ordered to report to Constructors and "carry out their instructions and their mission, whatever the mission might be." (R.T. 76, 332).

4. What instructions or directions Willis did receive on the job situs came from Constructors including the instruction to free the grounded boat. (R.T. 47–48, 81–82, 85–87).

5. Willis was not in contact with the Government from the time he left for the temporary assignment through its completion. (R.T. 333).

6. Although the actual time he worked for Constructors was short, Willis was loaned for as long as he was needed, and after the work ended was told by Constructors he would no longer be needed. (R.T. 101–102).

7. He was loaned to do work which was not within the scope of his normal employment. (R.T. 93–95).

8. This case does not involve a rental of operator and equipment as in *Billig*, but involves a gratuitous loan, during an emergency, without any written contract. (R.T. 69, 282).

Constructors had the authority to tell Willis when, where, and how to perform his job. He complied with Constructors'

directions; and the inference is equally strong that he was following orders rather than "merely cooperating with" Constructors.

I would affirm.