Wanda Alexander HOSTON, et al., Appellants,

v.

Earl SILBERT, U. S. Attorney for the District of Columbia, et al.

No. 81–1723.

United States Court of Appeals, District of Columbia Circuit.

Submitted Without Oral Argument.

Decided June 29, 1982.

David M. Basker, Washington, D. C., for appellants.

Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, Royce C. Lamberth, Kenneth M. Raisler and Jason D. Kogan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

Before ROBB, Senior Circuit Judge, WALD, Circuit Judge, and OBERDORFER,* United States District Judge for the District of Columbia.

Opinion PER CURIAM.

Dissenting opinion filed by Circuit Judge ROBB.

PER CURIAM:

█ The issue in this appeal is whether the district court erred in dismissing for lack of subject-matter jurisdiction, *see* 28 U.S.C. Rule 12(b)(1),[1] appellants' wrongful death action brought against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). We hold that the district court was in error and, accordingly, reverse and remand the case for appropriate proceedings.

## I. BACKGROUND

Curtis E. Hoston, Jr. died on October 27, 1976, as a result of injuries inflicted by deputy United States Marshals and other federal officials who held him in custody while he was awaiting arraignment before the Superior Court for the District of Columbia. Appellants' Complaint avers that Hoston was beaten to death while "unarmed, prone and manacled" and "left to die for over ½ hour without medical attention" in a holding cell. Joint Appendix ("J.A.") at 14. Appellees, on the other hand, claim that Hoston seized a revolver from one of the deputies and fired a shot in the courtroom and that he was fatally in-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Fed.R.Civ.P. 12(b)(1) provides, in pertinent part:

[T]he following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter ....

jured during the ensuing effort to subdue him. In May 1979, appellants, who are the administrator and next friends of Hoston's estate, brought this action against forty individual defendants and the United States under a variety of statutory and common law theories, including wrongful death, civil conspiracy and failure to prosecute. Appellants limit this appeal, however, to the dismissal of the wrongful death claim against defendant United States.

## II. ANALYSIS

The FTCA vests in the district court exclusive jurisdiction over claims for money damages against the United States for

> personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The district court concluded that appellants' pleadings failed to satisfy the FTCA requirement that an official's tortious acts be committed "within the scope of his office or employment." The

court relied primarily upon that portion of appellants' complaint which states that the officials who beat Hoston to death

> were at all times duly appointed and qualified U S Marshalls [sic] agents of the U. S. Government and acting in the course of their employment & duties, however certain of the activities complained of herein were willfully & maliciously *in excess of and outside the scope of their employment.*

J.A. at 13 (emphasis added). The court further observed that the theme of willful and malicious misconduct is reflected throughout the complaint, and "nowhere does the complaint state a cause of action for negligence." *Hoston v. Silbert*, 514 F.Supp. 1239, 1242, (D.D.C.1981), J.A. at 37, 39.

■■■ The quoted language notwithstanding, we think that appellants' complaint, taken as a whole, alleges acts sufficient to establish jurisdiction, although it may fall at the outer limits of liberal reading.[2] First, while appellants did not employ the term "negligence," the allegation that the deceased was "left to die for over ½ hour without medical attention" raises the issue of negligence as a basis of relief if the facts fail to show intentional wrongdoing.[3]

---

2. The overstatement of the complaint tends to obscure any legitimate claim appellants may have. The complaint largely spends its force on extreme accusations and unnecessarily includes language damaging to appellants' case. The following verbatim excerpt is characteristic:

> 4. Plaintiffs complain of a conspiracy of injustice & tyranny entrenched within the Federal Bureaucracy which is presently so pervasive as to insulate criminal public officials who as here murdered the deceased Mr. Hoston as in par. 1 above. This conspiracy against the public trust has prevailed to the detriment of the remaining public citizens because tentacles of that conspiracy now extend and infiltrate into the Congress & STAFF, the Executive Branch, National security & defense, The Judiciary, The Ensuing Agro-Energy Resource Monopoly, The financial sector, and the media and communications sector.
> This is made possible by the combination of:
> A. Having now co-opted the independent, investigative and deliberative citizen Grand Jury Power as guaranteed by the 9th.

Amendment to the U.S. Const. so as to preclude all but a rare criminal prosecution of public officials within the Federal bureaucracy, cooperating State Officials, and captains of U.S. Industry.

3. Cf. *e.g., International Distributing Corp. v. American District Telegraph Co.,* 569 F.2d 136, 139 (D.C.Cir.1977).

> It is true that plaintiff IDC did not plead the theory of negligent supervision. However federal courts grant the parties the relief to which the facts entitle them, even if the proper theory has not been pled. 10 C. Wright & A. Miller, Federal Practice and Procedure § 2664 at 120–121 (1973), and cases cited.

Similarly, Fed.R.Civ.P. 54(c) provides:

> Except as to a party against whom a judgment is entered by default, any final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

28 U.S.C. Rule 54(c).

We must also reject the district court's implication that willful and malicious misconduct is not actionable under the FTCA. Congress has specifically provided that section 1346(b) shall apply to the intentional torts of federal law enforcement officers, including claims arising out of assault and battery. 28 U.S.C. § 2680(h).[4] Thus, appellants' allegation of willful conduct by the government agents should not in itself deprive the district court of jurisdiction where, as here, the claim arose out of an alleged battery.[5] The question remaining is whether the complaint alleges facts sufficient to meet the FTCA requirement that the government employee's tortious act be committed "while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). Whether given acts are within the scope of employment is ultimately a legal question. *See, e.g., Dornan v. United States,* 460 F.2d 425, 427 (9th Cir. 1972) (whether particular act "within the scope of an employee's federal employment depends upon an analysis of the facts under the law of the place where the tort occurred"). Thus, our inquiry into the adequacy of the factual allegations to meet the applicable legal standard is not foreclosed by the conclusory opinion expressed in the complaint. Because liability depends upon "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b), we must look to District of Columbia *respondeat superior* and agency rules to determine whether these United States employees were acting within the scope of their employment. We find that appellants have alleged facts which, if proved, would establish vicarious liability under the laws of the District of Columbia.

In *Lyon v. Carey,* 533 F.2d 649 (D.C.Cir. 1976),[6] this court described the "outer bounds of *respondeat superior." Id.* at 651. The court held that an employer would be liable if an assault by an employee grew out of a foreseeable "job-related controversy"[7]

---

**4.** 28 U.S.C. § 2680 is a list of exceptions to § 1346(b) jurisdiction. In 1974 Congress amended § 2680(h) to read as follows:

§ 2680. Exceptions

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

**5.** Although appellants did not use the word "battery" in their pleadings, the complaint graphically alleges that the decedent's fatal injuries were the result of a beating by the Deputy Marshal and others; appellants thus plainly have alleged a battery.

Additionally, it is settled that the FTCA is available to federal prisoners. *United States v.*

*Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).

**6.** In *Lyon,* an employer was held liable for an assault with a knife, including rape, committed by its deliveryman upon a customer. The assault and rape followed a dispute between the deliveryman and the customer over whether he would carry upstairs the merchandise he had delivered and whether he could accept a check.

**7.** The *Lyon* court emphasized that "[t]he dispute arose out of the very transaction which had brought Carey to the premises, and, according to the plaintiff's evidence, out of the employer's instructions to get cash only before delivery." 533 F.2d at 652. The court concluded that it was "within the enterprise liability" of merchants that deliverymen "are likely to be in situations of friction with their customers" and that "these foreseeable altercations may precipitate violence for which recovery may be had, even though the particular type of violence was not in itself anticipated or foreseeable." *Id.* at 651.

In *Davis v. United States,* 542 F.2d 1361, 1364 (9th Cir. 1976), the court described the relationship between enterprise liability and *respondeat superior:*

In the final analysis, the various embellishments upon the general doctrine of respondeat superior are simply shorthand devices developed to allocate risk justly. A business

as opposed to a "personal adventure." *Id.* A subsequent case, *International Distributing Corp. v. American District Telegraph Co.*, 569 F.2d 136, 139 (D.C.Cir. 1977),[8] clarified that foreseeability must be combined with a purpose to further the employer's interest: "In the District of Columbia, '[u]nless an assault . . . is activated in part at least by a purpose to serve a principal, the principal is not liable.'" (quoting *Meyers v. National Detective Agency, Inc.*, 281 A.2d 435, 437 (D.C.App.1971)).[9]

Appellants' pleadings make out a case which could satisfy the *Lyon-International Distributing Corp.* scope-of-employment criteria. A United States Marshal's duties— escorting and supervising frequently hostile and potentially dangerous prisoners—create a strong likelihood of violent confrontations in the course of which an officer could lose his temper and use tortiously excessive force.[10] In paragraph one of the complaint, appellants allege that marshals assaulted the deceased while he was a "prisoner of the U. S. Marshals in the lock-up of the Arraignment Court of the District of Columbia Superior Court." J.A. at 14. Appellants thus placed the deceased in the marshals' custody at the time of the alleged

> should bear all risks which are usually associated with carrying on a business, but it should not be saddled with risks which arise solely by virtue of its employee's pursuit of purely personal convenience.

**8.** In *International Distributing Corp.*, the defendant (ADT) contracted to provide burglar alarm service to plaintiff, a liquor distributor. Part of the arrangement provided that, upon hearing an alarm, ADT would dispatch employees to plaintiff's storeroom. Plaintiff had provided keys for the ADT employees and in so doing left the fox to guard the henhouse. Defendant was held not vicariously liable for its employees' subsequent pilferage of plaintiff's merchandise. The court distinguished *Lyon*: "It is clear that the thefts in this case were 'simply a personal adventure' which did not spring from any purpose to serve the employer." 569 F.2d at 139.

**9.** For further clarification of this test *compare Neary v. Hertz Corp.*, 231 F.Supp. 480, 484 (D.D.C.1964) (agent committed assault in course of flight from hit-and-run accident while driving employer's vehicle, flight regarded as "essential link in the unbroken chain of events" such that the assault must be held "done in the

assault, connecting the alleged tort with "a purpose to serve [the] principal."

### CONCLUSION

For the foregoing reasons, we conclude that appellants have alleged facts upon which jurisdiction can be based. We therefore *reverse* the district court's dismissal of appellants' wrongful death claim against the United States and *remand* the case for proceedings not inconsistent with this opinion.

ROBB, Senior Circuit Judge, dissenting:

As I understand the majority opinion it concludes that the complaint alleges that Deputy Marshal Burch and the other marshals, acting within the scope of their employment, assaulted Hoston and then negligently left him to die without medical attention; in sum, that in performing their duties the marshals negligently injured Hoston. The difficulty with this theory is that it can be supported only by radical plastic surgery on the complaint. The theory of the case alleged in the complaint is that the marshals murdered Hoston and that in so doing they acted outside the scope of their employment. Thus, paragraph 1, J.A. 14 states:

> prosecution of [employer's] business"), *and Dilli v. Johnson*, 107 F.2d 669 (D.C.Cir.1939) (restaurant owner held liable for manager's assault on patron, "even though he may act wantonly and contrary to his employer's instructions") (*quoted in Lyon v. Carey*, 533 F.Supp. at 652–53, *with Penn. Central Transp. Co. v. Reddick*, 398 A.2d 27, 28 (D.C.App.1979) (off-duty brakeman assaulted a taxi driver while seeking transportation from Union Station, no evidence that the brakeman was trying to get to another job assignment; employer held not liable).

**10.** As the court noted in *Penn. Central Transp. Co. v. Reddick*, 398 A.2d at 31:

> The present trend is to extend liability for intentional torts to situations where the employment provides a "peculiar opportunity and . . . incentive for such loss of temper," as where an argument is likely by virtue of the servant's duties, and the conduct is wholly or partially in furtherance of the master's business.

Escorting potentially dangerous prisoners would seem to be the epitome of a "peculiar opportunity" for "such loss of temper."

1. *This cause of action arises because of the murder, homicide and wrongful death* of Curtis Hoston Jr. on Oct. 27, 1976 while a prisoner of the U. S. Marshalls in the lock-up of the Arraignment Court of the District of Columbia Superior Court. Defendant Asst. U. S. Marshall Carlisle Burch and others did willfully and maliciously and with a sadistic disregard for human life, "stomped" to death Mr. Hoston who being unarmed, prone and manacled was the recipient of such a frenzied profusion of blows that he was beaten repeatedly after loosing [sic] consciousness from his breastplate having been conpressed to such a degree that his heart became ruptured after being impailed upon the vertebrae of his spine and then left to die for over ½ hour without medical attention in the U. S. Marshall's holding cell of the District of Columbia Superior Courthouse. and [sic] the official conspiracy and cover-up thereafter. [emphasis supplied]

Paragraph 21, J.A. 13 states:

21. Defendants Burch and John Doe I, II, III & IV were at all times duly appointed and qualified US Marshalls agents of the U. S. Government and acting in the course of their employment & duties, *however certain of the activities complained of herein were willfully & maliciously in excess of and outside the scope of their employment.* [emphasis supplied]

I reject as fanciful any suggestion that murder is within the scope of the employment of a deputy marshal; and the complaint also in paragraph 21 recognizes that the alleged homicidal activities of the marshals were "willfully and maliciously in excess of and outside the scope of their employment."

Nowhere in the complaint is there any allegation of negligence on the part of the deputy marshals; the charge that Hoston was left to die is simply an allegation of the means whereby he was murdered. In short, this is not an action for negligence. A liberal reading should not permit the substitution on appeal of a new theory of recovery for the one alleged in the complaint. I note that this is not a *pro se* complaint, but one filed by a member of the bar.

I would not inflict upon the District Court the task of trying this case upon the basis of a fatally defective complaint. A copy of the complaint, omitting the formal caption, is appended to this opinion. It will speak for itself.

### APPENDIX

### PARTIES

1. The Plaintiff Wanda Alexander Hoston is the wife of the deceased Curtis Hoston, Jr. and brings this action as the next of kin, Administrator of the estate of the deceased and next friend and mother of the daughter of the deceased, a minor Ayodele O. Hoston; and next friend of the deceased's other daughter Curtina Hoston; and for herself personally.

2. The Defendant Earl Silbert is the U. S. Attorney for D. C. and he is sued in his official capacity and personally.

3. The defendant H. F. Shulke III is the Exec. Asst. U.S. Atty. for D. C. and is sued in his official capacity both now and for events following the death of C. Hoston, when he was Grand Jury Section Chief for the Superior Court for D. C. and he is sued in his personal capacity.

4. The defendant Roistacher is sued in his official capacity as Grand Jury Section Chief for the U. S. Attorney for D. C. in the U. S. District Court and is also sued personally.

5. The defendant Griffin Bell is the U. S. Atty. General and is sued in both his personal and official capacity.

6. The defendant Pottinger was the head of the Civil Rights Division of the U. S. Dept. of Justice and is sued personally.

7. The defendant McDonald is Deputy Chief of the Criminal division of the Dept. of Justice and is sued in his official capacity and personally.

8. The defendant Days is the Asst. Atty. Gen'l. of the Civil Rights Division of the Dept. of Justice and is sued both in his official and personal capacity.

9. Deft. McKinney was the U. S. Marshall for the District of Columbia and is sued personally.

10. The defendant Hon. J. Jerome Bullock is the U. S. Marshall for the District of Columbia and is sued in his official capacity only.

11. The defendant Burch is an Asst. U. S. Marshall for D. C. and along with defendants John Does I, II, III & IV are sued both in their official capacity and personally.

12. Defendant Washington was the Mayor of Washington, D. C. and is sued in his personal capacity.

13. Defendant HON. MARION BARRY is the present Mayor of Washington, D. C. and is sued in his official capacity only.

14. The defendant Chief Burtell Jefferson of the Metropolitan Police Department is sued in his official capacity only.

15. The defendant Cullinhane was the former chief of the Metropolitan Police Dept. of D. C. and is sued in his personal capacity.

16. Defendants John Doe V, VI, VII & VIII and O'Donnell, Bailey, Pierson, Crist, Deane, J. K. Kelly, Sevilla and "Heasthanig" are all members of the Metropolitan Police Department and are sued in their official and personal capacities.

17. Defendant Hall is the Director of the U. S. Marshall's Service and is sued in his official and personal capacity.

18. Defendant C. Kelly was the former head and director of the F. B. I. and is sued in his personal capacity.

19. The defendants John Doe IX & X are present members of the F. B. I and are sued in their official and personal capacities.

20. The defendant Hon. Wade McCree is the Solicitor General of the United States of America and is sued in his official capacity only.

21. Defendants Burch and John Doe I, II, III & IV were at all times duly appointed and qualified U. S. Marshalls agents of the U. S. Government and acting in the course of their employment & duties, however certain of the activities complained of herein were willfully & maliciously in excess of and outside the scope of their employment.

22. Defendant Metropolitan Police Officers of the District of Columbia including then Chief Cullinhane and excepting Chief Jefferson were at all times duly appointed police officers and agents of the Municipal Corporation acting in the course of their employment and engaged in performance of their duties as police officers.

23. Defendant Thornburg is sued in his personal capacity and was at all pertinent times herein the head of the Criminal Division of the Department of Justice and a prime mover in the illegalities and conspiracies complained of herein.

COMPLAINT

1. This cause of action arises because of the murder, homicide and wrongful death of Curtis Hoston Jr. on Oct. 27, 1976 while a prisoner of the U. S. Marshalls in the lockup of the Arraignment Court of the District of Columbia Superior Court. Defendant Asst. U. S. Marshall Carlisle Burch and others did willfully and maliciously and with a sadistic disregard for human life, "stomped" to death Mr. Hoston who being unarmed, prone and manacled was the recipient of such a frenzied profusion of blows that he was beaten repeatedly after loosing consciousness from his breastplate having been compressed to such a degree that his heart became ruptured after being impailed upon the vertebrae of his spine and then left to die for over ½ hour without medical attention in the U. S. Marshall's holding cell of the District of Columbia Superior Courthouse. and the official conspiracy and cover-up thereafter.

2. Primary jurisdiction is vested in this honorable Court pursuant to the Federal Tort Claims Act 28 USC 1346 et seq. Plaintiffs having exhausted their administrative claim which was perfected within two years of Oct. 2, 1976. This instant suit is filed within six months of the denial of that administrative claim.

3. The following causes of action are joined here as being pendent and ancillary to Federal jurisdiction

A. District of Columbia Wrongful Death Statute 11 D.C.Code 501, 16 D.C.Code 2701 (1973)

B. Both Criminal & Civil[1] Common Law offenses remain in force in the District of Columbia (49 D.C.Code 301) such that the Court had found inapplicable the rule that there is no common law offenses against the U. S. in D.C. (*Harrison v. Mayer* D.C., Ga 1915 224 F.Supp. ——) as where police officers were tried for the common law offense of negligent escape. (U.S. Vs Davis 83 US App DC 99)—and—The general law of damages apply to injured persons for damages against a public officer for misfeasance and non feasance (63 Am-Jur 2d 1548 Damages; Costs Public Officers & Employees) The following being common law crimes which are not "inconsistent with or replaced by a subsequent act of Congress." (49 D.C. Code 301)

3. B. continued, to wit:

i. Commonlaw crimes of Embracy & Champerty.

ii. Public Officials violating their oaths of office.

iii. Commonlaw obstruction of justice including Grand Jury rigging & corrupt failure to prosecute

iv. Murder and accessory after the fact thereto.

v. Misprison of felonies.

vi. Intimidation of witnesses to that murder

vii. Conspiracies involving i through vi above, including secreting witnesses from the Grand Juries.

C. Torts arising under the U.S. Constitution 5th. Amend. denial of life without due process; denial to Plaintiffs, the deceased and the public of ensuring the equal protection of the laws by corruptly conspiring and failure to prosecute public officials for Mr. Hoston's murder as well as the violation of his Civil Rights under the U.S.Code and the violation of his civil rights which resulted in a death under 18 USC 241 & 242.

D. Widow's pecuniary loss for death of husband, companionship, comfort and protection and consortium & support.

E. Children's pecuniary value of services from father including his love, advice and training, guidance & support.

F. Prosecutors do not enjoy absolute immunity for activities in aid of an investigatory (grand jury) function as opposed to an advocate (prosecutorial) function (Briggs v. Goodwin 186 USAppl DC 179)

4. Plaintiffs complain of a conspiracy of injustice & tyranny entrenched within the Federal Bureaucracy which is presently so pervasive as to insulate criminal public officials who as here murdered the deceased Mr. Hoston as in para. 1. above. This conspiracy against the public trust has prevailed to the detriment of the remaining public citizens because tentacles of that conspiracy now extend and infiltrate into the Congress & STAFF, the Executive Branch, National security & defense, The Judiciary, The Ensuing Agro-Energy Resource Monopoly, The financial sector, and the media and communications sector.

This is made possible by the combination of:

A. Having now co-opted the independent, investigative and deliberative citizen Grand Jury Power as guaranteed by the 9th. Amendment to the U.S. Const. so as to preclude all but a rare criminal prosecution of public officials with in the Federal bureaucracy, cooperating State Officials, and captains of U.S. Industry.

The U.S.Ct. of Appeals for D.C. appears to have taken judicial notice of this sickness and fascist characteristic of our now crippled system of justice where in *Briggs v. Asst. U.S. Atty Gen'l Guy Goodwin*, 185 US App DC 179, at pg. 193 after noting that there was a remedy of criminal sanctions to be employed against the perjurious U.S. Atty. or that the Federal Court

1. *Lisner v. Hughes*, 49 App DC 40.

could on its own motion punish Mr. Goodwin, found the fact that during the five years between the perjury and the Court's opinion that nothing had been done & went on to note that same "undercores the fact that such restraints on prosecutorial excesses are likely to remain theoretical only" *
Criminals within the Dept. of Justice can also insulate the fact that they join into a further conspiracy to cover-up these crimes and thereby become accessories after the fact to those crimes as well as practice misprison of felony by failure to report the crime to the attention of the Grand Juries, itself a Federal Crime (18 USC 5) and do so with impunity knowing that if they did not go along, and "play ball" and "blow the whistle" that nothing would be accomplished except that they would be "cutting their own throats."

B. While violating their oaths of office to "execute faithfully their duties, they use the excuse of prosecutorial discretion or lack of employee moral and with regard to maintaining employed moral they pay millions of taxpayer dollars to reimburse the legal costs of defending the few officials who have been indicted thereby generally practicing a not so subtle form of bribery, itself an obstruction of justice and the commonlaw crime of CHAMPERTY.

C. Utilization of self serving pleas of national security or highly "classified" and "secret" classifications to avoid their own criminal exposure, indictment and prosecutions such that they further obstruct justice.

D. Employ the fact that Grand Jury proceedings are secret for self-serving cover-up purposes.

E. Having entrenched an inordinate number of former DOJ attorneys as a percentage of U.S. Magistrates and Judges (over 50%) while that class represents less than 4% of all attorneys. So that the scales of justice are tilted toward a pro government bias by ju-

rists—many of whom can be relied upon to save harmless and protect public officials who appear to either commit or coverup crimes with impunity.

5. The conspiracy and illegal acts complained of in paragraph 4 above which are adopted here by reference with respect to the murder and cover-up of Mr. Hoston's death is made actionable against various of the defendants on a commonlaw basis within the District of Columbia as more particularly laid out in paragraph 3.B. above. Misfeasance comprises nonfeasance and Plaintiff's complain that NO evidence was presented to any U.S. Grand Jury regarding violations of Mr. Hoston's Civil Rights 18 USC 241 & 242 and same was coordinated by an illegal combination and conspiracy of defendants Silbert, Shulke, Postacher, Bell, Pottinger, McDonald, Days, McKinney, Thornburgh, Cullinhane, C. Kelly and Washington or their nonfeasance.

6. The conspiracy and illegal acts complained of in paragraph 4. above is hereby adopted by reference and is made actionable against various of the defendants on a commonlaw basis as per paragraph 3.B. above with respect to the murder and cover-up of Mr. Hoston's death, and Plaintiffs complain that advice, instructions, witnesses and evidence were corruptly presented to the D.C. Superior Court Grand Juries and was carefully orchastrated to preclude any indictment of public officials in general and U.S. Marshalls in particular and the defendants thereby commited the commonlaw crime of EMBRACY, obstruction of justice, and violation of their oaths of office and especially that some witnesses were systematically bribed or otherwise placed under duress in order that their testimony be not forthcoming or else at the behest of and in furtherance of a conspiracy to suborn perjurious testimony and same was adduced and by the illegal combination of defendants Silbert, Shulke, Roistacher, Bell, Pottinger, McDonald, Days, Hon. Richard Thornburgh, McKinneky, Burch, John Doe I, II, III & IV, Cullinhane & C. Kelly. or made possible by their nonfeasance.

* Underlining added for emphasis.

7. Plaintiffs complain that with regard to the U.S. Marshalls service the hereinabove mentioned conspiracy (paragraphs 4, 5, & 6) had particular application to the murder and coverup of Mr. Hoston's death because the U.S. Marshalls service is in a position to practice "extortion" against the Dept. of Justice to effectuate an avoidance of prosecution against members of that service; their having in the past been, along with the F.B.I. "handmaidens" and part of rampant illegalities and an on-going conspiracy with those organizations and Organized Crime, and having remained "loyal" i.e.

Witness under protection in organized crime trial murdered/hunting accident, while in custody of US Marshalls.

New York Police Dept. Officers rewarded by being promoted up to U.S. Marshall's service.

Substantial corruptors infiltrate the U.S. Marshalls. (N.Y.P.D. almost totally corrupt as per Frank Serpico) Organized crime then in a position to perform (services to convicted felons in prison) (women, liquor and drugs), & while being transported from institutions.

The Marshalls are then in a position to extort and remain under the protectionist umbrella of the conspiracy complained of and the incumbent illegality which has been before and above characterized by a failure to fairly administer Justice by career corrupters within the Department of Justice bureaucracy who for over 30 years have systematically covered up crimes by public officials with illegal working agreements not to prosecute U.S. Government officials within the Depts. of Defense, intelligence, Law Enforcement, Treasury and others for crimes ranging from Murder, drug sales and smuggling, black market profiteering both personally and for U.S. Agencies, wholesale violations of civilian and citizen constitutional & human rights, opening citizen mail, reading private telegrams, unsuspected druggings, employing prostitutes, burgleries, hate mail campaigns, amassing tons of manufactured intelligence against law abiding citizens for purposes of bureaucratic self assasinations, plotting assesinations and effectuating same, suborning perjury to congressional committees, infiltrating congress and their Staff, the judiciary, the executive branch and infiltrating and corruptly influencing grand juries of which the exoneration of the particular defendant murderers Burch and John Does I, II, III & IV is complained of here.

All defendants with the exception of Bullock, Barry & Burtell Jefferson, by having adopted that conspiracy to coverup the Murder of Mr. Hoston and having given aid and effectuation to that purpose thereby became accessories after the fact to that crime and are liable over to the plaintiffs for their mis feasance or mal feasance.

Alternatively the hereinbeforenamed defendants in this Court are liable to the plaintiffs for their nonfeasance.

8. The defendant McKinney is liable over to the plaintiffs for his nonfeasance and dereliction of duty to properly supervise defendants Burch and John Does I, II, III & IV by failing to have psychological stress testing performed upon those employees to ferret out and deal with their sadistic propensities which would allow the "stomping to death" of the unarmed, manacled & prone Mr. Hoston. The defendant is charged with particular knowledge of the psychological infirmities of Burch and John Does I, II, III & IV such that had he exercised the degree of care that a reasonable and prudent man would have exercised, Mr. Hoston's life would remain viable and sacred.

9. Defendants Burch and John Doe I, II, III & IV are sued in their individual capacities for the heinous murder and unjustifiable homicide of Mr. Hoston as above complained and adopted here by reference as a constitutional tort; under the D.C. Wrongful Death Statute and under the common-law for malfeasance in office.

10. The allegations in the foregoing counts are adopted here by reference as against the United States of America, The Department of Justice and the U.S. Marshalls Service and these defendants are liable over to Plaintiffs under the Federal Tort Claims Act.

11. The allegations in the foregoing counts are adopted here by reference as against

the defendant District of Columbia whereby the past Mayor Washington and all defendant Metropolitan police Officers adopted the illegal conspiracy to cover-up the murder of Mr. Hoston and are liable over to the plaintiffs including defendant Cullinhane for commonlaw misfeasance & malfeasance or nonfeasance.

12. All defendants who are employed as attorneys for the Dept. of Justice or were so employed are liable over to the plaintiffs personally (See: *Briggs v. Guy Goodwin* 186 US Appl DC 179) in that their criminal and tortious conduct complained of in counts 5 & 6 above and which is hereby adopted for reference and fell outside the confines of those prosecutorial activities for which absolute prosecutorial immunity applies and they are thereby liable over to Plaintiffs for misfeasance, malfeasance or corrupt nonfeasance as per paragraph 3 above, or are liable over for accepting the illegal conspiracy in regard thereto and giving aid and effectuation thereto. This is so because their activities were in aid of an investigative (grand jury) function as opposed to an advocate (prosecutorial) function.

WHEREFORE premises considered Plaintiffs and each of them demand judgment as follows:

1. As against the United States of America in an amount of Five Million Dollars each for a total of Fifteen Million Dollars.

2. As against the District of Columbia in an amount of Five Million Dollars each for a total of Fifteen Million Dollars and for an additional amount of Five Million Dollars each for punative damages (Total 30 Million Dollars.)

3. As against each defendant named individually for an amount of One Million Dollars per each defendant for compensatory damages and an additional One Million Dollars for punative damages.

And for such other and further relief as the Court may deem just and proper including but not limited to a direction that the facts and evidence regarding the murder of Mr. Curtis Hoston, Jr. be submitted to a U.S. Grand Jury by independent and outside counsel—independent of the U.S. At-torneys office for the District of Columbia and outside the U.S. Dept. of Justice in that the Statute of Limitations will not run against a murder charge! and to correct a gross conflict of interest and miscarriage of justice!

## JURY DEMAND

Plaintiffs by counsel the undersigned demand a jury trial on all counts hereinabove except that delineated as a claim under the Federal Tort Claims Act.

I hereby certify that the foregoing Complaint by me subscribed is true to the best of my knowledge, information and belief.

Wanda Alexander Hoston
Plaintiff
    Respectfully submitted,
    D. Mitchell Basker # 140855
    Attorney for Plaintiffs
    1346 Conn. Ave., N.W. # 1024
    P.O. Box 19331
    Washington, D.C. 20036
    (202) 296:1984

Sworn & Subscribed this 9th day of May, 1979

Deputy Clerk, U.S.Dist.Ct.D.C.